[No. H005639. Sixth Dist. May 15, 1989.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF MONTEREY COUNTY, Respondent;
CESARIO MORAZA, Real Party in Interest.

COUNSEL

Michael W. Bartram, District Attorney, and Morgan C. Taylor, Deputy District Attorney, for Petitioner.

No appearance for Respondent.

Joseph F. Landreth for Real Party in Interest.

OPINION

**PREMO, Acting P. J.**—This petition for statutory mandate (Health & Saf. Code, § 11488.4, subd. (h))[1] in a forfeiture proceeding seeks review of a trial court order partly granting the motion for return of seized property made by claimant and real party in interest Cesario Moraza. The trial court denied return of a handgun but ordered return of currency in the amount of $28,597. The issues are (1) whether an arrest on drug-related charges is a prerequisite for a forfeiture of contraband or its fruits, and (2) whether there must be probable cause to believe the property is forfeitable when it is initially seized. We hold that the answer to both these questions is no, for reasons we shall state.

RECORD

The district attorney initiated this action on behalf of the People by filing a petition pursuant to section 11470, subdivision (f), seeking to forfeit to the

---

[1] All statutory references are to the Health and Safety Code unless otherwise indicated, and where recent amendments have been made, the references are to the statutes which apply to this 1988 transaction, viz., Statutes 1987, chapter 924.

state the sum of $28,597 in currency and one Smith & Wesson semi-automatic handgun. The parties stipulated that the circumstances surrounding the seizure of the property sought to be forfeited were described in police reports which could be received in evidence at the hearing on the propriety of the forfeiture.

The police reports indicated that the police originally became involved in this matter when the claimant's wife, Lisa Moraza, came to the police station with injuries including a laceration which required stitches. She reported that her husband Cesario had beaten her with his fists and pushed her into a glass coffee table causing her to break and cut her finger. He then took their six-month-old daughter and left the residence. She wished to file charges against him and file for divorce.

Later the police went with Lisa to the residence to stand by for protection while she obtained her belongings and took her baby from her husband. The police arrested him for a violation of Penal Code section 273.5 (spousal injury). After Cesario was handcuffed and placed in the police vehicle, Officer Junkin observed a styrofoam bullet box on the broken coffee table in the living room. It appeared to be half full. Officer Junkin asked Lisa if she was afraid of her husband and she stated that she was. He asked her if she thought he might hurt her if he got out of jail and she said, "Yes." Then he asked if she knew where her husband kept the gun and if she wanted the police to look for it and keep it until the problems could be worked out. Again she said yes. Officer Junkin searched the residence but could not find the gun. Then she suggested it might be in the truck which was parked in the carport, and told Officer Junkin that the keys were on the kitchen table and he could go and check the truck. He did so. No item was in plain sight, but after searching he found an orange boot box which, when opened, revealed the semi-automatic pistol, more ammunition, a paycheck payable to Mr. Moraza for $263.52 from his place of employment, and many small, rolled and folded packets of United States currency in denominations of five, ten, twenty, fifty and one hundred dollar bills, totalling $27,900.

The officer showed this money to Mrs. Moraza and asked her if her husband dealt in drugs. She said no. He then took the money and weapon to the station and contacted other officers. Detective Stryker asked Mrs. Moraza for permission to search the truck again; she agreed. Papers with cocaine residue were found. Also, Officer Stryker had another police unit bring to the scene a dog trained to detect narcotics, and the dog alerted on the boot box in the truck.

On the subsequent search, Officer Stryker found evidence in the residence that drugs were being dealt there, including suspected narcotic packaging

material, namely, a box of baggies next to the bed in the master bedroom containing a list of phone numbers, and a razor blade with cocaine residue. Moraza admitted he purchases cocaine and sells some to friends for money. Lisa denied knowledge of the large sum of money found in the truck but later admitted she knew he was involved with drugs. The officer also found financial records which showed large financial transactions which were likely to be drug sales.

Later investigations showed that Moraza was currently earning $300 to $400 a month at Melville Roofers, where he had only worked a month and a half, and for the rest of 1988 he had worked as a gardener and earned less than $10,000.

Moraza has not been arrested for nor charged with any drug-related offenses.

Moraza successfully moved for the return of the currency in the superior court, arguing that a precondition of a forfeiture is a drug-related arrest and further that there must be probable cause at the time of the seizure of personal property for forfeiture.

## DISCUSSION

### Statutes

The relevant statutes are quoted in full in the margin, and in pertinent part provide as follows: section 11470, subdivision (f),[2] by authority of which the petition for forfeiture was filed, makes subject to forfeiture moneys furnished in exchange for a controlled substance or used or intended to be used to facilitate any violation of the controlled substance laws. (The statute recites a number of specific provisions of the Health & Saf. Code, violation of which will invoke the forfeiture law.) This statute makes no mention of arrests or convictions for the enumerated drug offenses. Next, section 11488 provides that any police officer may, incident or subsequent to

---

[2] "The following are subject to forfeiture: [¶] [ ] (f) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, or securities used or intended to be used to facilitate any violation of Section 11351, 11351.5, 11352, 11355, 11359, 11360, 11378, 11378.5, 11379, 11379.5, 11379.6, or 11382 of this code, or Section 182 of the Penal Code, insofar as the offense involves manufacture, sale, possession for sale, offer for sale, or offer to manufacture, or conspiracy to commit at least one of those offenses, if the exchange, violation, or other conduct which is the basis for the forfeiture occurred within five years of the seizure of the property, or the filing of a petition under this chapter, or the issuance of an order of forfeiture of the property, whichever comes first." (§ 11470, subd. (f); Stats. 1987, ch. 924, § 1.)

an arrest for one of the enumerated drug offenses, seize any item subject to forfeiture under section 11470.[3] Finally, section 11488.4, subdivision (i), provides that conviction of the offense which made the property subject to forfeiture is not a prerequisite to the forfeiture where the property to be forfeited is cash not less than $25,000.[4] (§ 11488.4, subds. (i)(2), (i)(4).) The present version of the statute eliminates the requirement of a conviction for all forfeitures. (§ 11488.4, subd. (i); Stats. 1988, ch. 1492, § 9.)

Where there is a claim to the property sought to be forfeited, the government has the burden of proving by clear and convincing evidence that the property is subject to forfeiture within section 11470. (§ 11488.4, subd. (i)(4).) The statute also provides that a claimant to the property may move for its return by showing an ownership interest, while a defendant may do so on the ground that there is not probable cause to believe that the property is subject to forfeiture within section 11470. (§ 11488.4, subds. (g) and (h).) These statutes, taken together, act to allocate the burden of proof; the People must show by clear and convincing evidence that the property is forfeitable, but the claimant can defeat the forfeiture if he can demonstrate lack of probable cause to believe it is forfeitable.

---

[3] "(a) Any peace officer of this state, subsequent to making or attempting to make an arrest for a violation of Section 11351, 11351.5, 11352, 11355, 11359, 11360, 11378, 11378.5, 11379, 11379.5, 11379.6, or 11382 of this code, or Section 182 of the Penal Code insofar as the offense involves manufacture, sale, purchase for the purpose of sale, possession for sale or offer to manufacture or sell, or conspiracy to commit one of those offenses, may seize any item subject to forfeiture under subdivisions (a) to (f), inclusive, of Section 11470. [¶] The peace officer shall also notify the Franchise Tax Board of a seizure where there is reasonable cause to believe that the value of the seized property exceeds five thousand dollars ($5,000). [¶] [ ] (c) Receipts for property seized pursuant to this section shall be delivered to any person out of whose possession such property was seized, in accordance with Section 1412 of the Penal Code. In the event property seized was not seized out of anyone's possession, receipt for the property shall be delivered to the individual in possession of the premises at which the property was seized. [¶] (d) There shall be a presumption affecting the burden of proof that the person to whom a receipt for property was issued is the owner thereof. This presumption may, however, be rebutted at the forfeiture hearing specified in Section 11488.5." (§ 11488; Stats. 1987, ch. 924, § 3, No. 9 West's Cal. Legis. Service, pp. 931-932; No. 4 Deering's Adv. Legis. Service, pp. 3147-3148.)

[4] Section 11488.4, subdivision (i), states, in pertinent part: "(2) In the case of property described in subdivision (f) of Section 11470, except cash, negotiable instruments, or other cash equivalents of a value of not less than twenty-five thousand dollars ($25,000), for which forfeiture is sought and as to which forfeiture is contested, the state or local governmental entity shall have the burden of proving beyond a reasonable doubt that the property for which forfeiture is sought meets the criteria for forfeiture described in subdivision (f) of Section 11470. [¶] [ ] (4) In the case of property described in subdivision (f) of Section 11470 that is cash or negotiable instruments of a value of not less than twenty-five thousand dollars ($25,000), the state or local governmental entity shall have the burden of proving by clear and convincing evidence that the property for which forfeiture is sought is such as is described in subdivision (f) of Section 11470. There is no requirement for forfeiture thereof that a criminal conviction be obtained in an underlying or related criminal offense." (Stats. 1987, ch. 924, § 4, No. 9 West's Cal. Legis. Service, pp. 933-934; No. 4 Deerings's Adv. Legis. Service, pp. 3149-3150.)

*Standard of Review*

The trial judge here did not indicate what standard of proof he applied in reaching his decision, nor did he make any specific findings.

The lack of findings is not significant, however. ■ The federal rule in forfeiture proceedings provides that a district court's determination of probable cause in a forfeiture proceeding is reviewed as a question of law. (*United States* v. *$93,685.61 in U.S. Currency* (9th Cir. 1984) 730 F.2d 571, 572, cert. den. 469 U.S. 831 [83 L.Ed.2d 61, 105 S.Ct. 119]; *United States* v. *1982 Yukon Delta Houseboat* (9th Cir. 1985) 774 F.2d 1432, 1434.) No reason appearing for a contrary rule, we adopt the same standard.

*Federal Law*

The federal statute governing forfeitures is 21 United States Code section 881. Subdivision (a)(6) of that statute is nearly identical to the general California forfeiture provision, section 11470, subdivision (f); like section 11470, subdivision (f), 21 United States Code section 881(a)(6) enumerates as forfeitable monies and other valuables furnished or intended to be furnished in exchange for a controlled substance or traceable to the proceeds of such exchange. That statute is further amplified by a statute specifying the burden of proof for forfeiture of tangible items, which provides that the burden is on the claimant to the property, provided that the government shall first show probable cause. (19 U.S.C. § 1615.) The federal decisions appear to apply this rule also in forfeitures of monies, requiring an initial showing of probable cause that the monies are connected with drug transactions. (E.g. *U.S.* v. *Four Million, Two Hundred Fifty-Five Thous.* (11th Cir. 1985) 762 F.2d 895, cert. den. *sub nom. Four Million, Two Hundred Fifty-Five Thousand, Six Hundred Twenty-Five Dollars and Thirty-Nine Cents ($4,255,625.39), et al.* v. *United States* (1986) 474 U.S. 1056 [88 L.Ed.2d 772, 106 S.Ct. 795].) The required probable cause is often defined as a reasonable ground for belief of guilt, less than prima facie proof but more than mere suspicion. (See generally Annot. (1982) 59 A.L.R.Fed. 765, 774; e.g., *United States* v. *One Twin Engine Beech Airplane, etc.* (9th Cir. 1976) 533 F.2d 1106; *United States* v. *U.S. Currency, etc.* (E.D.N.Y. 1980) 495 F.Supp. 147.)

■ There is a separate requirement, akin to probable cause, that the forfeiture not depend on unconstitutionally obtained evidence. Both the United States and the California Supreme Courts have held that evidence obtained in violation of the Fourth Amendment may not be relied on to sustain a forfeiture. (*One 1958 Plymouth Sedan* v. *Pennsylvania* (1965) 380 U.S. 693, 696 [14 L.Ed.2d 170, 172, 85 S.Ct. 1246]; *People* v. *One 1960*

*Cadillac Coupe* (1964) 62 Cal.2d 92, 96-97 [41 Cal.Rptr. 290, 396 P.2d 706]; see generally Annot., Lawfulness of Seizure of Property Used in Violation of Law as Prerequisite to Forfeiture Action or Proceeding (1966) 8 A.L.R.3d 473.) An initial illegal seizure of the property to be forfeited does not immunize it from forfeiture; but there must be legally obtained evidence to sustain the judgment of forfeiture. (*John Bacall Imports, Ltd.* v. *United States* (9th Cir. 1969) 412 F.2d 586, 588-589.)

Assuming the probable cause and Fourth Amendment requirements are satisfied, the claimant then has the burden on the "nexus" issue, whether the property is sufficiently connected with drug transactions to justify forfeiture. In this respect, the federal cases require no showing that the property is tied to a particular identifiable drug transaction. (E.g., *United States* v. *1982 Yukon Delta Houseboat, supra,* 774 F.2d 1432, 1435, fn. 4; *United States* v. *$93,685.61 in U.S. Currency, supra,* 730 F.2d 571, 572; *United States* v. *$250,000 in United States* (1st Cir. 1987) 808 F.2d 895, 899-900; but for the limits on this doctrine see *U.S.* v. *Pole No. 3172, Hopkinton* (1st Cir. 1988) 852 F.2d 636.)[5]

The weight of federal authority also holds that conviction is not necessary to support forfeiture. (See generally Annot. (1985) 38 A.L.R.4th 515, 518; e.g., *United States* v. *One 1976 Buick Skylark, etc.* (D.D.C. 1978) 453 F.Supp. 639.)

Thus, it is clear that in federal law an arrest is not required to sustain a forfeiture. This result is consistent with the theoretical basis for the forfeiture rules, that the property is forfeit not because the owner is criminally charged but because he has permitted his property to be used for illicit purposes, or, in the case of money, because it is ill-gotten fruit of such activity. "The seemingly harsh rule which permits condemnation of the vehicle without regard to the owner's culpability is explained by the fact that historically forfeiture is a civil proceeding *in rem.* The vehicle or other inanimate object is treated as being itself guilty of wrongdoing, regardless of its owner's conduct." (*U.S.* v. *One 1976 Mercedes Benz 280S* (7th Cir. 1980) 618 F.2d 453, 454, citing many decisions.)

---

[5] Holding that payment of some of several mortgage payments with drug proceeds did not make the house forfeitable: "We do not believe, however, that forfeitability spreads like a disease from one infected mortgage payment to the entire interest in the property . . ." (*U.S.* v. *Pole No. 3172, Hopkinton, supra,* 852 F.2d 636, 639); so to interpret 21 United States Code section 881(a)(6) would deprive persons accused of dealing drugs of the right to own any property.

*State Law*

## A. Requirement of Conviction or Arrest

We now consider the applicable California law. In state courts, it is a matter of statute whether or not a conviction is a requirement for a forfeiture. (Annot., *supra,* 38 A.L.R. 4th 515, 518.) California law expressly provides that a conviction is not required. (§ 11488.4, subd. (i)(4).) Our law therefore does not differ from the federal law in this respect.

As to the requirement of an arrest, as we have stated, the federal statutes are silent and the cases have articulated no such requirement. The federal statute does not contain an equivalent of the California statute upon which Moraza relies, providing that the police may seize forfeitable property incident to or subsequent to a drug arrest. (§ 11488.) The question is whether this difference in the statutes requires a different rule.

Claimant has here provided no legislative history indicating any focus on these problems. Specifically, he has demonstrated no legislative concern with the federal rule which does not require an arrest or a conviction. The California statute authorizing forfeitures, section 11470, subdivision (f), is nearly identical to 21 United States Code section 881(a)(6). And the two forfeiture schemes are basically similar; in each the focus is on the taint in the property, not on culpability or individual criminal responsibility of its owner. Absent any express legislative intention to make the California law different from the federal law, and given the basic similarities of the two systems, there is therefore no rational reason to assume a difference in the requirement of an arrest simply by virtue of the existence of section 11488, a statute which does no more than grant the police authority to seize property.

Section 11488 imposes no mandatory limit on the power to seize property in a forfeiture proceeding. It merely says permissively that a police officer *may* seize property incident to or subsequent to a drug arrest. In granting that authority, the statute does not necessarily imply a limitation on the power to seize where there is no arrest; the law is simply silent. Under these circumstances we assume the Legislature meant to adopt the well established federal rule, which requires no arrest but protects the property owner by requiring first a showing of probable cause and then a demonstration of nexus.

## B. Constitutional Issues

The next issue is whether there was probable cause to believe the property was forfeitable and whether its seizure is tainted with illegality under the

Fourth Amendment. Resolution of those issues in this case does not depend on factual circumstances, such as whether there was consent to search the truck. ■ As a matter of law, it appears that the search of the truck and the impounding of the money are justifiable, in light of the contemporaneous arrest of Moraza for spousal injury, as a legitimate search for a weapon followed by an inventory search.

The police initially searched the truck on a legitimate quest for a weapon which they had cause to believe might be located there. A gun concealed in the vehicle would be independently subject to forfeiture. (Pen. Code, § 12028.) When they uncovered the money as well, there was a need to place it in safekeeping since the wife disclaimed knowledge of it and the husband was being arrested. Inventory searches to protect an owner's property have long been treated as valid by the federal courts under the Fourth Amendment, including in the context of forfeiture proceedings. (See, e.g., *U.S.* v. *One 1976 Mercedes Benz 280S, supra,* 618 F.2d 453, 455; *United States* v. *Pappas* (1st Cir. 1980) 613 F.2d 324, 332; see generally *South Dakota* v. *Opperman* (1976) 428 U.S. 364, 368 [49 L.Ed.2d 1000, 1005, 96 S.Ct. 3092]; *People* v. *Burch* (1986) 188 Cal.App.3d 172, 177-178 [232 Cal.Rptr. 502]; *Colorado* v. *Bertine* (1987) 479 U.S. 367 [93 L.Ed.2d 739, 107 S.Ct. 738].) Accordingly, as a matter of law the initial search of the truck and seizure of the funds did not violate the Fourth Amendment.

■ Next, there was sufficient probable cause that the money was the fruit of narcotics transactions to sustain the People's initial burden in the forfeiture proceeding. Many circumstances suggested that nexus, including the size of the sum compared with Moraza's known earning power, the wife's ignorance of the money, and the manner in which it was stored.

If one takes account of later developed evidence, there is more than enough evidence to sustain the forfeiture. A trained dog identified the boot box where the money was stored as having contained narcotics and, as detailed above, officers found considerable other evidence that narcotics were being sold from the Moraza home. This is ample evidence of probable cause, raising considerably more than a mere suspicion that this money was the result of drug sales and, for purposes of the California statute, satisfying the statutory clear and convincing evidence burden. Moraza has not rebutted any of that evidence; the record shows no proof that the money flowed from an innocent independent source.

The federal cases permit use of later-acquired evidence to sustain the forfeiture. Most federal decisions treat the probable cause showing not as a demonstration that the police could have sustained a forfeiture at the instant of seizure, but rather as the government's initial burden of proof when

the matter is finally being tried. (See *United States* v. *Kemp* (4th Cir. 1982) 690 F.2d 397, 401; *Boas* v. *Smith* (4th Cir. 1986) 786 F.2d 605, 609; *U.S.* v. *One 1978 Mercedes Benz, Four-Door Sedan* (5th Cir. 1983) 711 F.2d 1297, 1302.) The *Kemp* case points out that the probable cause which establishes illicit nexus does not depend on the time when the evidence was obtained. "Forfeit is forfeit. Therefore, the passage of time between the occurrence of the facts giving rise to probable cause and the occurrence of the seizure is irrelevant." (*United States* v. *Kemp, supra,* 690 F.2d 397, 401, fns. omitted.)

The use of the phrase "probable cause" may cause some confusion in this respect since it is also the phrase of art to test the constitutional validity of arrests and searches. But under the forfeiture laws, again, the probable cause test is not the yardstick of the initial seizure but is simply the government's prima facie case of nexus justifying forfeiture, which the claimant may rebut. Given that the initial search which led to discovery of the money was not unconstitutional, there is no legal reason why the probable cause necessary to accomplish the forfeiture must depend only on the initially existing circumstances, as decisions such as *Kemp* recognize. There is no perceptible reason why the result in the state courts should differ.

## C.  Summary

To summarize, in this case both requirements, of constitutionality and of statutory probable cause, are satisfied. The initial search and seizure was part of a legitimate search for a weapon followed by a protective inventory search; and the forfeiture is itself sustainable because there is probable cause to believe the money is the fruit of narcotics transactions in light of all the evidence. Claimant Moraza has not successfully rebutted that evidence; he has presented no evidence showing a legitimate source of the money.

## DISPOSITION

Real party in interest has been notified that a peremptory writ in the first instance could be issued here, and he has filed opposition. The peremptory writ of mandate will issue in the first instance. (Code Civ. Proc., § 1088; *Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 177-182 [203 Cal.Rptr. 626, 681 P.2d 893].)

Let a writ of mandate issue as prayed, directing respondent court to vacate its order dated March 10, 1989, and to enter a new and different order denying real party's motion for return of the forfeited currency. Our

temporary stay of execution dated April 7, 1989, shall remain in effect until this opinion becomes final.

Cottle, J., and Elia, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied August 24, 1989.