[No. A057668. First Dist., Div. One. Aug. 17, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
$47,050, Defendant;
GREGORY STUART HAMPTON, Defendant and Appellant.

## COUNSEL

Goodman & Chesnoff and David Z. Chesnoff for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Ronald S. Matthias and Martin S. Kaye, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

STEIN, J.—Gregory Stuart Hampton appeals from a judgment holding that $47,050 found in a search of Hampton's residence is forfeited pursuant to Health and Safety Code section 11470.

### FACTS

On May 31, 1990, Hampton filed a claim asserting an interest in $47,050 that was seized in a search of his home. On June 18, 1990, the district attorney filed a petition instituting a civil action for forfeiture of the money pursuant to Health and Safety Code section 11488.4.

A bench trial was held on October 29, 1991. Robert Bastida, who was employed by the district attorney as an inspector, testified that he obtained and served a warrant to search for cocaine and other indicia of drug trafficking on Hampton's residence.[1] The search disclosed 84.53 grams of marijuana. Bastida testified that he recovered .34 grams of a white powder substance that he believed to be cocaine. In his opinion, the substance he believed to be cocaine was not possessed for the purpose of sale.[2] Bastida found a digital electronic scale in the garage that could measure grams and kilograms. In the master bedroom, Bastida found $47,050 in cash. In the same room, he found a shotgun and a pistol. Bastida also seized tax returns and bank records. Bastida described the residence as being approximately 3,600 square feet with an electric gate "guarded by two Rottweiler guard dogs."

[1]The court admitted the search warrant and accompanying affidavit, apparently for the limited purpose of establishing the lawfulness of the search. The court sustained Hampton's objection to Bastida's reliance on any information contained in the affidavit in support of the search warrant as a basis for his opinion that the seized funds were going to be used to purchase cocaine.

[2]On the second day of trial, Hampton withdrew a stipulation that the white powder was in fact cocaine because the district attorney had been unable to procure the exhibit and lab results.

Bastida's expert opinion was that Hampton was a "drug trafficker," and that the cash found in the master bedroom was going to be used to purchase "additional controlled substances." Bastida explained that one of the reasons he believed the cash was to be used to purchase cocaine was that he did not find significant amounts of drugs. He testified that "the cash and cocaine are generally the same thing. You will either have a large quantity of cash or a large amount of cocaine." Bastida's opinion was also based on the following factors: "the scale, large amount of cash, the weapons, the security of the premises." Bastida added that his opinion was supported by the fact that the tax returns showed an approximate gross income of $67,000, yet Hampton was in possession of approximately $48,000. He stated that the bank records showed deposits of approximately $570,000 over a 26-month period.

Appellant testified that his primary business is construction and renovations. His gross reported income for the years 1986-1989 was $306,911. In 1986 he reported $46,211, in 1987 $72,275, in 1988 $105,650, and in 1989 $82,775. In 1987 he obtained financing for building projects in the amount of $325,000, and in 1989 he obtained approximately $562,000. He commingled his business and personal accounts. In 1989, pursuant to a written contract, appellant sold to Fritz Scholten an 18k gold Patek Philippe watch for $38,500. Scholten testified that the price represented the value of the watch. Scholten paid cash for the watch in four monthly installments. Appellant testified that the seized cash represented the proceeds from the sale of his watch and his personal savings. Appellant testified that of the six homes in his neighborhood, four had iron security gates, that the dogs were family pets, and he used the guns for wild boar hunting.

## ANALYSIS

Health and Safety Code section 11470, subdivision (f) provides that, "[a]ll moneys . . . furnished or intended to be furnished by any person in exchange for a controlled substance . . ." is subject to forfeiture. If a claimant moves for return of the property, the People must make a minimum prima facie showing of probable cause to believe the property is subject to forfeiture. (Health & Saf. Code, § 11488.4, subd. (g).) The People also have the ultimate burden of "proving by a preponderance of evidence that the property is subject to forfeiture as described in section 11470."[3] (Health & Saf. Code, § 11488.4, subd. (i).)

---

[3]Appellant incorrectly contends that the People's burden of proof is by clear and convincing evidence. In support of this proposition he cites *People* v. *Superior Court* (*Moraza*) (1989) 210 Cal.App.3d 592, 599 [258 Cal.Rptr. 499]. The *Moraza* court was citing a prior version of Health and Safety Code section 11488.4, which has since been amended to state that the burden is by preponderance of the evidence. (Health & Saf. Code, § 11488.4, subd. (i).)

The California procedure differs from the federal scheme, which requires that the prosecution merely make a threshold showing of probable cause. The burden then shifts *to the-*

■ Evidence sufficient to support an inference that seized funds are related to *some* illegal activity does not establish even a prima facie case of probable cause absent the demonstration of some link between the cash and a narcotics transaction. The government must establish some nexus between the seized funds and a narcotics transaction. (See, e.g., *U.S.* v. *$31,990 in U.S. Currency* (2d Cir. 1993) 982 F.2d 851, 854.)[4]

In *U.S.* v. *$31,990 in U.S. Currency, supra*, 982 F.2d 851, the court found that a prima facie case of probable cause had *not* been made based on the following evidence: (1) a large amount of cash was found in the trunk of an unregistered cab; (2) the cash was bundled using rubber bands and a plastic bag; (3) the claimant originally denied ownership of the cash and gave an incredible explanation as to its source; (4) the taxicab was following a route typically traveled by Dominican drug couriers; (5) the claimant possessed one-half gram of cocaine at the time the cash and car was seized. (*Id.* at pp. 854-855.) Based on the foregoing evidence, two agents also offered their expert opinion that the cash was related to narcotics transactions. The court rejected the contention that possession of a large amount of cash "is *per se* evidence of drug-related activity. . . . [¶] . . . It is no more indicative of drug sales than it is of weapon sales, gambling, or a myriad of other illegal activities. At best, the presence of a large amount of cash in the cab supports an inference of illegal activity but does not suggest that the seized currency was tied to the exchange of a controlled substance." (*Id.* at p. 854.) The court further explained that while the presence of one-half gram of cocaine might support an inference of personal use and "access to drug dealers, such a small amount of cocaine as one half gram does not provide a strong inference that [claimant] was engaged in drug trafficking. Moreover, there is

claimant to establish by a preponderance of the evidence that the property is not subject to forfeiture. (See, e.g., *U.S.* v. *Four Parcels of Real Property* (11th Cir. 1991) 941 F.2d 1428, 1438; *People* v. *Washington* (1990) 220 Cal.App.3d 912, 916-917 [269 Cal.Rptr. 668].)

[4]Although Health and Safety Code section 11488.4 clearly defines the People's ultimate burden at a forfeiture trial, it is less clear what the appropriate standard of review should be. One case, following the lead of federal law, has held that the court's finding of *probable cause* sufficient to survive a motion for return of the property is reviewable de novo. (See *People* v. *Superior Court (Moraza), supra*, 210 Cal.App.3d 592.) No California case, however, discusses the appropriate standard of review when the court ultimately determines that the People have proved, by a preponderance of the evidence, that the seized property is subject to forfeiture. Some federal cases apply the "clearly erroneous" standard (see, e.g., *U.S.* v. *1977 Porsche Carrera* (5th Cir. 1991) 946 F.2d 30, 33), which is similar to the California substantial evidence standard. In this case, to the extent that appellant argues that the evidence failed even to establish a prima facie case of probable cause, the appropriate standard is arguably de novo review. In any event, this court need not resolve the question because the evidence is insufficient to establish the required nexus between the seized funds and a drug transaction under either standard of review.

no evidence linking the one-half gram of cocaine found on Coste [to, or showing it was purchased with a portion of] the large sum of money found in the cab." (*Id.* at p. 855.) The court added that the fact that the occupants told an incredible story regarding the source of the cash suggested consciousness of guilt but did not indicate what type of illegal activity the consciousness of guilt might relate to. (*Ibid.*) Finally, the court noted that the expert opinion of the two agents "added nothing," apparently because these opinions were based on evidence the court had found insufficient. (*Ibid.*)

 Similarly, in this case the presence of the large amount of cash, and the apparent discrepancy between recorded deposits in Hampton's account and his reported income, may indeed support the inference that Hampton was engaged in some kind of illegal activity. What is lacking in this case is sufficient evidence to support the conclusion that the illegal activity specifically related to narcotics trafficking, or evidence linking the cash to a narcotics transaction. The court precluded Bastida from relying on any information set forth in the affidavit in support of the search warrant in forming his opinion. The search of Hampton's home revealed only .34 grams of a substance Bastida believed to be cocaine, an amount so small that Bastida himself testified that, in his opinion, it was not possessed for the purpose of sale. The amount of marijuana was so small that Hampton was found eligible for diversion. The scale found was not the typical Ohaus beam scale used in narcotics transactions and, although it was theoretically capable of weighing large amounts of drugs, it was equally consistent with any number of legitimate uses. There was no evidence of narcotics residue or any other evidence suggesting that the scale was used for weighing drugs. Hampton offered a well-corroborated explanation as to the *source* of cash that was not refuted.[5] The security gate, the presence of "guard dogs," and the weapons suggest that Hampton was concerned about security, and may even support the inference that his concerns were heightened because he was engaged in some kind of illegal activity. Nevertheless, there is nothing in the record beyond speculation to support the conclusion that his security concerns related particularly to the protection of drug trafficking activities.

Ultimately, in order to establish that the cash was either "furnished or intended to be furnished" in exchange for a controlled substance, we are left

---

[5]Respondent cites *United States* v. *$41,305.00 in Currency* (11th Cir. 1986) 802 F.2d 1339 for the proposition that the fact that a claimant offers some evidence of a legitimate source for the cash does not compel the court to reject the more probable inference that the cash was related to narcotics trafficking. The court, of course, is not compelled to accept the claimant's explanation for the source of the cash where conflicting inferences may be drawn. The People, in this case, however, contend that, assuming arguendo that appellant established a legitimate source for the cash, that the People nonetheless proved by a preponderance of the evidence that the cash was going to be used to purchase narcotics.

only with Bastida's expert opinion that, regardless of the source of the cash, he believed that the cash was to be used to purchase narcotics. ▮ Although an expert's opinion on an ultimate issue of fact is admissible, and may constitute substantial evidence (see *People* v. *Douglas* (1987) 193 Cal.App.3d 1691, 1695 [239 Cal.Rptr. 252]), the conclusion *by itself* does not constitute substantial evidence without an adequate factual foundation. (See, e.g., *United States* v. *$38,600.00 in U.S. Currency* (5th Cir. 1986) 784 F.2d 694 [court found no probable cause despite expert's testimony that money found in car was part of a narcotics transaction, because no evidence of nexus between cash and narcotics trafficking].)[6]

▮ We have already explained that the facts relied upon by Bastida may support an inference that Hampton was engaged in some type of illegal activity, but that they are insufficient to support his conclusion that the cash was going to be used to purchase cocaine. Moreover, Bastida's opinion was based in part on the unsubstantiated assumption that Hampton was engaged in drug trafficking: Bastida may have received information from confidential informants concerning appellant's involvement in narcotics trafficking sufficient to support the issuance of a search warrant. The court, however, refused to allow Bastida to rely on that information in the forfeiture proceeding and no objections to that evidentiary ruling are raised in this appeal. Nonetheless, Bastida testified that one of the reasons he believed that the cash was to be used to purchase narcotics was that he *did not* find significant amounts of narcotics in the search. Bastida explained that "the cash and cocaine are generally the same thing. You will either have a large quantity of cash or a large amount of cocaine." The unspoken premise, for which there was no adequate factual foundation, is that narcotics trafficking is in fact being carried on in the place being searched.

▮ To obtain a judgment of forfeiture, the People need not offer evidence of the discovery of significant quantities of narcotics, or even

---

[6]Respondent argues that the federal cases analyzing whether the evidence satisfies the probable cause standard have no application, because in this case the court found the People proved by a preponderance of the evidence that the property is subject to forfeiture, whereas in the federal cases the government need only establish a prima facie case of probable cause. Under both the state and federal schemes, however, the probable cause standard represents the minimum prima facie case the People must make. (See Health & Saf. Code, § 11488.4, subd. (g); and see, also, Health & Saf. Code, § 11488.5, subd. (d) [to obtain a default judgment the People must establish a prima facie case].) Evidence that is sufficient to support a finding of probable cause does not amount to proof by a preponderance of the evidence. (*U.S.* v. *$31,990 in U.S. Currency, supra*, 982 F.2d at p. 854.) Thus, if evidence in a federal case is found insufficient to support a threshold finding of probable cause, it, a fortiori, is persuasive authority that similar evidence in this case is insufficient to support the conclusion that the People have carried their ultimate burden of proof. (See *People* v. *Superior Court (Rishwain, Hakeem & Ellis)* (1989) 215 Cal.App.3d 1411, 1414, fn. 1 [264 Cal.Rptr. 28].)

direct evidence of a specific narcotics transaction. Nevertheless, they must offer some evidentiary basis for inferring a link between the seized cash and past or future narcotics activity. This can be accomplished in a variety of ways, even without discovering large quantities of narcotics. For example, in *United States* v. *$41,305.00 in Currency, supra,* 802 F.2d 1339, although no narcotics were discovered in the search of the residence of a suspected narcotics trafficker, agents seized a large quantity of cash. The link to narcotics activity was established by evidence of narcotics transactions in which the claimant's husband had been involved and the discovery of a legal pad containing records of marijuana transactions. Similarly, in *U.S.* v. *Eighty-Eight Thousand, Five Hundred Dollars* (8th Cir. 1982) 671 F.2d 293, cash seized in a hotel room was forfeited on the ground that it was to be used to purchase narcotics, based on evidence that the purchaser of a large amount of marijuana had retired to the claimant's hotel room when agents, who had arranged the buy, requested to see the money and had returned with a suitcase full of cash. ▐ It is not enough, however, as was done in this case, to offer evidence that the claimant is involved in some type of illegal activity, which is no more likely to be narcotics activity than it is to be a tax code violation.

The cases relied upon by respondent are distinguishable because in each of these cases there was either direct or circumstantial evidence that the seized cash was related to narcotics transactions. For example, respondent cites *U.S.* v. *$111,980.00 in U.S. Currency* (E.D.Wis. 1987) 660 F.Supp. 247, 249-250, for the proposition that an expert's opinion that cash was going to be used to purchase drugs was sufficient. In that case, however, in addition to the discovery of over $100,000 in a paper bag and, scattered around a crashed airplane, a scale, and the claimant's lack of source for the cash, the agents discovered a notebook containing notations referring to " 'hash and hash oil' " together with numbers consistent with the then current price.

Respondent also cites *United States* v. *$93,685.61 in U.S. Currency* (9th Cir. 1984) 730 F.2d 571 for the proposition that a large amount of cash is strong evidence that it is furnished, or intended to be furnished, in exchange for controlled substances. In that case, in addition to the large amount of cash, the court was presented with strong circumstantial evidence linking the cash to drug trafficking. In particular, the Drug Enforcement Agency officers had intercepted a package intended for the claimant which contained cocaine, heroin, and items of false identification, including a birth certificate with claimant's fingerprints on it. (*Id.* at p. 572.) There was also documented evidence of the claimant's prior involvement in drug transactions and, unlike the case before us, the court admitted evidence of an anonymous tip that he was currently involved in drug transactions. (*Ibid.*)

## CONCLUSION

The judgment is reversed. Costs on appeal are awarded to appellant.

Newsom, Acting P. J., and Dossee, J., concurred.