[No. B097410. Second Dist., Div. Seven. Oct. 6, 1997.]

THE PEOPLE, Plaintiff and Respondent, v.
$497,590 UNITED STATES CURRENCY, Defendant;
JAVIER GIRARDO, Defendant and Appellant.

**COUNSEL**

Peter N. Priamos for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney, Gary W. Schons, Assistant Attorney General, and Jeffrey J. Koch, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**JOHNSON, J.**—In this forfeiture action we are asked to decide whether substantial evidence demonstrates a nexus between the funds seized at a private home and narcotics transactions in order to justify forfeiture of the funds. We conclude several circumstances in combination are more than enough to establish the required nexus and thus affirm.

### FACTS AND PROCEEDINGS BELOW

The trial court heard this case on the following stipulated facts. As the result of a large-scale drug trafficking and money laundering investigation that began in August of 1992 and continued through January of 1994, and involving both federal and local police agencies, police determined a local Los Angeles business, Sam's Travel & Telecommunications, was being used to send huge amounts of illegal drug-trafficking proceeds to Colombia, South America. As a result of that investigation, two owners of the business

were indicted in August of 1994 and thereafter pleaded guilty to drug money laundering charges in the United States District Court for the Central District of California.

During the course of this investigation, officers on June 30, 1993, observed two Hispanic persons, a male and female, conducting some sort of business from Sam's Travel & Telecommunications. The officers followed the two people to the Chinatown area of Los Angeles. There officers observed them make numerous pay phone and pager phone telephone calls. These are activities commonly used by drug traffickers to prevent police from using telephone records to assist them in their investigation. The Hispanic couple then drove their pickup truck to 36622 Santalina, in the City of Palmdale, where they loaded a laundry dryer onto the truck. From there the two drove to a Monterey Hills address, utilizing what narcotics detectives described as "counter-surveillance" driving. This is a common practice used by drug traffickers to expose and elude following police officers. Such driving tactics typically include driving slowly at less than the flow of traffic, making sudden and unsignaled changes in velocity and direction, as well as "running" red traffic lights. Each of these tactics is designed to make unobserved surveillance very difficult.

On July 12, 1993, members of the Orange County Regional Narcotics Suppression Program (RNSP), a multiagency police organization involved in the overall investigation, conducted a surveillance of the residence in Palmdale. The only activity the officers observed were the comings and goings of a woman and two small children.

On July 13, 1993, RNSP officers again watched this residence. About 10 a.m., officers approached the Palmdale house and contacted the female they observed there earlier. The woman said her name was Anita Rivera, and that she lived there with her two small children and her boyfriend, Ismael Santos. The officers explained they were involved in a narcotics investigation and requested permission to search the premises. Ms. Rivera orally consented and, in addition, executed a written consent to search form.

Officers then searched the residence. In the attic area of the house, they found two large trash bags, each containing a large amount of United States currency. The money was bundled in various denominations. A later count of the money revealed it totaled $497,590.[1]

Ismael Santos told police officers the money had been brought to the house by his friend, Javier Girardo (the claimant in this action), who paid

---

[1]The complaint and judgment in this case state the defendant property is $497,590. Due to an apparent typographical error the caption page on the judgment, as well as claimant's notice of appeal, state the property is $497,950, rather than $497,590.

him $1,000 to take care of it. He stated Girardo once before had brought over some $200,000, and paid him $1,000 to watch it for a few days, then later returned and picked it up.

In addition to a washer and dryer located in the laundry room area of the residence, officers found another dryer in the garage, with most of its inner parts removed. According to experienced narcotics detectives, large appliances are commonly used to smuggle drug-trafficking proceeds out of the country. Most of the internal parts are removed and replaced with stacks of paper bills.

In the office and/or bedroom of the house, the officers found numerous one-gallon empty plastic bags with different dollar amounts written on them. For example, one bag had $30,000 written on it. Officers found an additional sum of approximately $2,000 in the master bedroom along with assorted papers with the name Ismael Santos on them.

Santos denied he owned the money and executed a currency disclaimer form to that effect. Santos was not arrested, and no criminal charges were filed against Santos or claimant Girardo as a result of the seizure of the money.

Detective Terry N. Todd is an Orange County Deputy Sheriff. For the last seven and a half years, he has been with "Sonny," his canine partner, a Labrador retriever trained to detect illicit drugs. Periodically, Detective Todd has obtained both uncirculated and circulated moneys from various banks, to test Sonny's ability to differentiate between drug-contaminated money and "clean" money. The dog has never "alerted" to "clean" money. However, Sonny alerted to claimant's money, indicating the dog smelled illicit drugs. Based on the dog's reaction, his knowledge of the facts of this case, as well as his training and experience, Detective Todd testified it was his expert opinion claimant's money was contaminated with drug residue and is the proceeds of illicit drug trafficking.

Jay E. Williams runs an independent toxicology laboratory, with an emphasis on the analysis of suspected alcohol and drug items as well as the subject of the influence of commonly used drugs and alcohol on human beings. Mr. Williams has conducted his own tests of cocaine contamination of circulating money. Based upon a number of such tests involving samples of money acquired from many different locations, the results of which varied from 10 percent to 90 percent contamination, it was his expert opinion a substantial portion of United States currency currently in circulation is to a measurable extent contaminated by cocaine residue.

Mr. Williams opined "[d]ogs with only mediocre smelling abilities can easily detect cocaine in the microgram (millionth of a gram) range . . . . Cocaine residue on individual pieces of currency has been found in the range of nanograms (billionths) to milligrams (thousandths) of a gram. . . ."

The officers found the $497,590 in two 32-gallon trash bags in the attic of the house. The reports state the money was in various denominations. The parties stipulated that given the minimum detection figures for cocaine contamination of currency found throughout the country, and a canine's capabilities of drug detection, a trained dog would be expected to alert to the general drug contamination found on the circulated United States currency at issue in this case.

On July 19, 1993, the Los Angeles County District Attorney filed a complaint for forfeiture of claimant's $497,590. The complaint alleged that within five years of its date of seizure, the property was furnished or intended to be furnished by a person in exchange for a controlled substance, or was proceeds traceable to such an exchange, or was used or intended to be used to facilitate a violation of law described in Health and Safety Code section 11470, subdivision (f). Claimant Girardo filed a claim opposing forfeiture on October 4, 1993.

On August 23, 1995, after a bench trial, the trial court found claimant had proven by a preponderance of the evidence he had standing to contest forfeiture of the money. The court also found the People had proven to a preponderance of the evidence claimant's money was subject to forfeiture under Health and Safety Code section 11470, subdivision (f). Claimant appeals from the judgment of forfeiture.

## DISCUSSION

### I. *Controlling Law in This Asset Forfeiture Proceeding.*

Under Health and Safety Code section 11494, ". . . [for] any property seized or forfeiture proceeding initiated before January 1, 1994, the proceeding to forfeit the property and the distribution of any forfeited property shall be subject to the provisions of this chapter in effect on December 31, 1993, as if those sections had not been repealed, replaced or amended." Accordingly, the Health and Safety Code provisions regarding seizure or forfeiture proceedings in effect on December 31, 1993, control this action. (*People* v. *Thirty-One Thousand Five Hundred in U.S. Currency* (1995) 32 Cal.App.4th 1442, 1452 [38 Cal.Rptr.2d 836].)

Health and Safety Code section 11470, subdivision (f) provides: "All moneys . . . furnished or intended to be furnished by any person in exchange for a controlled substance, all proceeds traceable to such an exchange . . ." are subject to forfeiture.

If a claimant moves for return of the property, the People must make a minimum prima facie showing of probable cause to believe the property is subject to forfeiture. (Former Health & Saf. Code, § 11488.4, subd. (g).) According to the law in effect at the time of the seizure the People have the ultimate burden of "proving by a preponderance of the evidence that the property is subject to forfeiture as described in Section 11470." (Former Health & Saf. Code, § 11488.4, subd. (i).)[2]

■ Proof by a preponderance of the evidence is a less stringent standard than either proof by clear and convincing evidence or proof beyond a reasonable doubt. (See 1 Witkin, Cal. Evidence (3d ed. 1986) The Opinion Rule, § 516 et seq., p. 134 et seq. [comparing the differing standards of proof]; see also *Weber* v. *Anderson* (Minn. 1978) 269 N.W.2d 892, 895.) Preponderance of evidence " 'simply requires the trier of fact "to believe that the existence of a fact is more probable than its nonexistence before [he] may find in favor of the party who has the burden to persuade the [judge] of the fact's existence." ' " (*Concrete Pipe & Products of Cal., Inc.* v. *Construction Laborers Pension Trust for Southern Cal.* (1993) 508 U.S. 602, 622 [113 S.Ct. 2264, 2279, 124 L.Ed.2d 539], quoting the concurring opinion by Harlan, J., in *In re Winship* (1970) 397 U.S. 358, 371-372 [90 S.Ct. 1068, 1076-1077, 25 L.Ed.2d 368].)

■ ". . . [T]he California forfeiture statute is patterned after the federal drug forfeiture statute. (Cf. Health & Saf. Code, § 11470 et seq. with 21 U.S.C. § 881.)" (*People* v. *$28,500 U.S. Currency* (1996) 51 Cal.App.4th 447, 463 [59 Cal.Rptr.2d 239].) "The federal statute governing forfeitures is 21 United States Code section 881. Subdivision (a)(6) of that statute is nearly identical to the general California forfeiture provision, section 11470, subdivision (f) . . ."[3] (*People* v. *Superior Court (Moraza)* (1989) 210 Cal.App.3d 592, 598 [258 Cal.Rptr. 499].) For this reason California courts

---

[2]Effective August 1994, the governmental entity pursuing the forfeiture action against the type and quantity of currency involved in this case has the burden of proving the property is subject to forfeiture by clear and convincing evidence. (Health & Saf. Code, § 11488.4, subd. (i)(4).)

[3]The federal statute reads: "All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this title, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this title, except that no property shall be forfeited under this

consider federal decisions on asset forfeiture persuasive authority. (See, e.g., *People* v. *Nazem* (1996) 51 Cal.App.4th 1225, 1233 [59 Cal.Rptr.2d 794]; *People* v. *Superior Court (Moraza)*, *supra*, 210 Cal.App.3d 592, 598; *People* v. *Superior Court (Clements)* (1988) 200 Cal.App.3d 491, 497, fn. 5 [246 Cal.Rptr. 122]; *People* v. *Superior Court (Rishwain, Hakeem & Ellis)* (1989) 215 Cal.App.3d 1411, 1414, fn. 1 [264 Cal.Rptr. 28].)

II. *Standard of Review of the Sufficiency of the Evidence to Support the Trial Court's Judgment Ordering Forfeiture.*

■ The standard of review of a challenge to the sufficiency of the evidence to support a judgment is well established. "Where the ruling that is the subject of appeal turns on the trial court's determination of disputed facts, the appropriate standard of review on appeal is 'sufficiency of the evidence.' Evidence is sufficient if there is 'substantial' evidence to support the ruling. Such evidence 'must be reasonable in nature, credible, and of solid value. . . .' [Citation]." (*In re Robert L.* (1993) 21 Cal.App.4th 1057, 1065 [24 Cal.Rptr.2d 654].)

"In reviewing the evidence on such an appeal all conflicts must be resolved in favor of the respondent, and all legitimate and reasonable inferences indulged in to uphold the verdict if possible. It is an elementary, but often overlooked, principle of law, that when a verdict is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury. When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court. [Citations]." (*Crawford* v. *Southern Pacific Co.* (1935) 3 Cal.2d 427, 429 [45 P.2d 183]; accord, *Cochran* v. *Rubens* (1996) 42 Cal.App.4th 481, 486 [49 Cal.Rptr.2d 672]; *Sparks* v. *Owens-Illinois, Inc.* (1995) 32 Cal.App.4th 461, 471 [38 Cal.Rptr.2d 739]; see also 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 278, p. 289.)

Under the substantial evidence test, the evidence on appeal must be viewed in a light most favorable to the prevailing party. (*In re Marriage of Mix* (1975) 14 Cal.3d 604, 614 [122 Cal.Rptr. 79, 536 P.2d 479]; *People* v. *25651 Minoa Dr.* (1992) 2 Cal.App.4th 787, 799 [3 Cal.Rptr.2d 577].) Therefore, an order challenged on appeal "is presumed correct and all intendments and presumptions are indulged to support the order on matters

paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner." (21 U.S.C. § 881(a)(6).)

to which the record is silent. It is appellants' burden to affirmatively demonstrate error and, where the evidence is in conflict, [the appellate court] will not disturb the trial court's findings." (*Laguna Auto Body* v. *Farmers Ins. Exchange* (1991) 231 Cal.App.3d 481, 487 [282 Cal.Rptr. 530]; *Cochran* v. *Rubens, supra,* 42 Cal.App.4th 481, 486.)

We review the court's judgment ordering forfeiture with these standards in mind.

III. *The Trial Court Did Not Err in Allowing the Forfeiture Because the Stipulated Facts Constituted Sufficient Evidence to Establish a Nexus Between the Seized Funds and a Narcotics Transaction as Required by California Law.*

 Claimant argues the evidence, as presented in the stipulation of facts, is insufficient to support the judgment of forfeiture. He contends the evidence failed to establish a nexus between the seized funds and narcotic transactions in order for the forfeiture judgment to stand. He points out officers found no drugs or drug paraphernalia at any time in the course of their investigation. There was also no evidence claimant had a prior arrest or conviction for drug-related offenses. He argues evidence of the large sum of money seized and the dog's alert to drug residue on the currency, standing alone, are insufficient to supply the required link with drug trafficking.

In support of his argument claimant relies on the decision in *People* v. *$47,050* (1993) 17 Cal.App.4th 1319 [22 Cal.Rptr.2d 32]. In that case the appellate court held the evidence was insufficient to support a judgment of forfeiture. A search of the claimant's residence disclosed small amounts of drugs believed to be possessed for personal use: 84.53 grams of marijuana and .34 grams of cocaine. In addition, officers found a digital scale, a shotgun, a pistol and $47,050 in cash. The residence was surrounded by an electric gate and was guarded by two Rottweiler guard dogs.

The prosecution offered the expert testimony of a police investigator who opined the claimant was a drug trafficker. It was his opinion the money was going to be used to purchase cocaine. He based his opinion on the lack of drugs found in the home, the large amount of cash, the weapons found and the security of the premises. The claimant offered an explanation in rebuttal. He testified the seized cash represented the proceeds from the sale of an 18k gold Patek Philippe watch and his personal savings. He also testified that of

the six homes in his neighborhood, four had iron security gates, the dogs were family pets, and he used the guns for wild boar hunting.

The appellate court concluded the evidence did not even present prima facie evidence to link the seized cash to drug trafficking. "What is lacking in this case is sufficient evidence to support the conclusion that the illegal activity specifically related to narcotics trafficking, or evidence linking the cash to a narcotics transaction." (17 Cal.App.4th at p. 1324.) The court noted even the police investigator acknowledged the quantity of drugs found in the home was too small to be possessed for sale. Police found no drug residue in the residence, the scale officers found was not of the type usually used by drug dealers, and the claimant had offered a plausible and unrefuted explanation for the source of the cash. Although the claimant's heightened concern for security supported an inference he was possibly in engaged in some illegal activity, the prosecution offered no evidence the illegal activity was drug related. (*Ibid.*)

■ The court pointed out it is not enough "to offer evidence that the claimant is involved in some type of illegal activity, which is no more likely to be narcotics activity than it is to be a tax code violation." (17 Cal.App.4th at p. 1326.) The court explained the People's burden as follows: "To obtain a judgment of forfeiture, the People need not offer evidence of the discovery of significant quantities of narcotics, or even direct evidence of a specific narcotics transaction. Nevertheless, they must offer some evidentiary basis for inferring a link between the seized cash and past or future narcotics activity." (17 Cal.App.4th at pp. 1325-1326; accord, *United States* v. *Banco Cafetero Panama* (2d Cir. 1986) 797 F.2d 1154, 1160 [government must have probable cause to connect the property with narcotics activity, but need not link the property to a particular transaction]; *U.S.* v. *Four Million, Two Hundred Fifty-Five Thous.* (11th Cir. 1985) 762 F.2d 895, 904 [nothing in the statute requires evidence of a particular narcotics transaction]; *United States* v. *Brock* (D.C. Cir. 1984) 747 F.2d 761, 762-763 [241 App.D.C. 324] [while "[t]here was no direct evidence to connect the jewelry with the claimant's alleged narcotics activities," the court affirmed the judgment of forfeiture because "[c]ircumstantial evidence and inferences therefrom are good grounds for a finding of probable cause in a forfeiture proceeding"].)

■ As noted, in this particular asset forfeiture action the People only needed to establish a nexus between the cash and drug trafficking by a preponderance of the evidence. (Former Health & Saf. Code, § 11488.4, subd. (i).) We conclude the stipulated facts supply an ample evidentiary basis to establish the required nexus in this case.

This case exemplifies the routine of a drug money laundering organization in which illicit proceeds from drug transactions are clandestinely transported to a "safe house" where a "mule" "sits" on the money for a fee until it is packaged for surreptitious transport out of the country. (See *United States* v. *$364,960.00* (5th Cir. 1981) 661 F.2d 319, 321-322; see also *U.S.* v. *Hoyland* (9th Cir. 1990) 914 F.2d 1125, 1131.)

First, the large amount of currency found at this one location is strong circumstantial evidence the money is connected to narcotics trafficking. While some federal courts have suggested possession of "[f]ifteen to twenty thousand dollars is hardly enough cash, standing alone, to justify more than a suspicion of illegal activity," the courts have also recognized the converse. (See *U.S.* v. *$191,910.00 in U.S. Currency* (9th Cir. 1994) 16 F.3d 1051, 1072.) A large stash of cash supplies "strong evidence" the money was exchanged for illegal drugs. (*U.S.* v. *$39,873.00* (8th Cir. 1996) 80 F.3d 317, 319 ["possession of a large amount of cash [nearly $40,000] is strong evidence that the cash is connected with drug trafficking"]; *U.S.* v. *$67,220.00 in U. S. Currency* (6th Cir. 1992) 957 F.2d 280, 285 [carrying a large sum of cash is strong evidence of some relationship with illegal drugs]; *U.S.* v. *Currency, in the Amount of $150,660.00* (8th Cir. 1992) 980 F.2d 1200, 1206 [several courts have held the possession of a large amount of cash is strong evidence the cash is connected with drug activity]; *United States* v. *$93,685.61 in U.S. Currency* (9th Cir. 1984) 730 F.2d 571, 572 [the extremely large amount of money found in the household itself is strong evidence the money was furnished or intended to be furnished in return for drugs].)

In the instant case, nearly half a million dollars was recovered. This is several times more cash than other courts found sufficient to infer the money was connected to drug transactions. The large sum of currency also easily distinguishes this case from those claimant cites where the sums involved were less than one-tenth as much as here. (*U.S.* v. *U.S. Currency, $30,060.00* (9th Cir. 1994) 39 F.3d 1039; *U.S.* v. *$31,990.00 in U.S. Currency* (2d Cir. 1993) 982 F.2d 851.)

A second circumstance the courts have found to support an inference the money is connected to drug trafficking is the way currency is wrapped or stored. (*People* v. *$30,000 U. S. Currency* (1995) 35 Cal.App.4th 936, 939 [41 Cal.Rptr.2d 748] [$100 bills stapled together in stacks of $1,000 secreted in spare tire of abandoned vehicle in backyard]; *People* v. *$28,500 in U.S. Currency, supra*, 51 Cal.App.4th 447, 450 [currency was placed in brown paper bag inside brown plastic bag]; *U.S.* v. *$31,990 in U.S. Currency, supra*,

982 F.2d 851, 854 ["[w]hile we recognize that the method of bundling may be probative of drug activity, we emphasize that it is but one factor weighing in favor of a finding of probable cause"]; cf. *U.S.* v. *Jenkins* (8th Cir. 1996) 78 F.3d 1283, 1288 ["the defendant had over $100,000 in cash stored in a garbage bag in his home. A jury certainly could have concluded from this evidence that the defendant was aware that the money in question had resulted from drug activity"]; *U.S.* v. *$29,959.00 U.S. Currency* (9th Cir. 1991) 931 F.2d 549, 553 [currency found in men's clothing dresser and hidden in a man's sock]; *U.S.* v. *U.S. Currency, $83,310.78* (9th Cir. 1988) 851 F.2d 1231, 1235-1236 [currency found in a brown shopping bag].)

In the instant case, nearly half a million dollars in small denomination bills were stashed in two plastic bags and hidden in an attic. This house was not even claimant's own residence. Instead it was another's home and claimant was paying this person to hide this cash for him. Thus, this is even stronger evidence than evidence of money stored in a garbage bag the Eighth Circuit found sufficient in *U.S.* v. *Jenkins* to prove "the defendant was aware that the money in question had resulted from drug activity." (*U.S.* v. *Jenkins, supra,* 78 F.3d at p. 1288.)

Moreover, the money was found in a house containing the tools of the money-laundering trade. (Cf., e.g., *People* v. *25651 Minoa Dr., supra,* 2 Cal.App.4th 787, 793 [relevant circumstance was discovery of drug paraphernalia and cutting agent found in claimant's home office from which he sold drugs].) The officers found money-packaging materials and a laundry dryer with its insides removed. Law enforcement officers described how narcotics traffickers often use these modified dryers to conceal large bundles of cash and to transport it from one location to another or smuggle it out of the country.

Third, courts consider it significant the money is found at a location connected to a drug-trafficking and money-laundering organization. (See *People* v. *$30,000 U.S. Currency, supra,* 35 Cal.App.4th 936, 939 [currency found near greenhouse in backyard containing 95 marijuana plants and near garage housing methamphetamine lab]; *U.S.* v. *Saccoccia* (1st Cir. 1995) 58 F.3d 754, 782; *U.S.* v. *Ramirez* (5th Cir. 1992) 954 F.2d 1035, 1039-1040.) The stipulated facts here clearly show a connection between Sam's Travel & Telecommunications, a business which the parties stipulated was used to send large amount of illegal drug trafficking proceeds to Colombia, and the residence where the subject currency was seized. Officers observed two persons, who were apparently conducting business from Sam's Travel & Telecommunications, pick up a laundry dryer and deliver it to the parties

who were paid to guard the cash. The most direct evidentiary link, however, was the stipulated fact it was claimant who paid Santos the money to guard the cash and that he had done so on a prior occasion as well.

A fourth circumstance present here, the dog's detection of cocaine on claimant's cash, provoked the most discussion in the briefs. Claimant argues the canine alert to illegal drug residue does not constitute sufficient evidence to support the forfeiture because of the large amount of contaminated money presently in circulation in the United States. Indeed several courts have questioned the value of a canine alert due to the same argument the claimant offers here. (See *U.S.* v. *$5,000 in U.S. Currency* (6th Cir. 1994) 40 F.3d 846, 849-850; *U.S.* v. *U.S. Currency, $30,060.00, supra*, 39 F.3d 1039, 1041-1044.) At the same time, however, many courts continue to consider canine alert as probative evidence the currency is related to narcotics trafficking. (*People* v. *$28,500 in U.S. Currency, supra*, 51 Cal.App.4th 447, 452-454; *U.S.* v. *Saccoccia, supra*, 58 F.3d 754, 777; *U.S.* v. *$215,300 U.S. Currency* (9th Cir. 1989) 882 F.2d 417, 419.) Moreover, even claimant's cited cases concede a dog alert is relevant and probative of drug activity when combined with other credible evidence clearly connecting the money to illicit drugs. (*U.S.* v. *U.S. Currency, $30,060.00, supra*, 39 F.3d at p. 1042.)

The other decisions claimant relies on are factually distinguishable. (*U.S.* v. *U.S. Currency, $30,060.00, supra*, 39 F.3d 1039; *U.S.* v. *$31,990.00 in U.S. Currency, supra*, 982 F.2d 851.) These cases involved sums of money less than a 10th the amount seized in the instant case. These cases involved money seized from vehicles randomly stopped for non-narcotic enforcement reasons (*U.S.* v. *U.S. Currency, $30,060.00* [police officers found a plastic bag filled with money on the passenger side of the claimant's vehicle when he was stopped for a traffic violation]; *U.S.* v. *$31,990.00 in U.S. Currency* [police officers found money in the trunk of the car when claimant was stopped on suspicion of being a "gypsy" cab—a vehicle used to transport people for hire but not registered with a taxi medallion].) In both of these cases, there was no evidence to connect the money, the vehicles, or the occupants of those vehicles with narcotics trafficking—as distinct from a mere suspicion the money was the proceeds of some sort of illegal activity.

By contrast, in the instant case officers found nearly a half a million dollars stashed in a house connected to a major drug-trafficking and money-laundering organization. It was bundled in packages, stuffed into two large garbage bags and hidden in the attic of a residence whose occupant claimant paid to conceal this cash and a prior stash of cash. The house also contained

equipment drug traffickers typically use to transport and smuggle their proceeds out of the country. Altogether, the circumstantial evidence in this case is more than sufficient even without the "dog alert" evidence to support the judgment of the trial court.

## DISPOSITION

The judgment is affirmed. Each side to bear its own cost on appeal.

Lillie, P. J., and Woods, J., concurred.