CAMPBELL, Acting Chief Judge.
Appellant challenges the nonfinal order forfeiting currency discovered in his vehicle upon a finding of probable cause to believe that the currency was illicitly used within the meaning of section 932.701(2)(e), Florida Statutes (1997). We conclude that probable cause did not exist under the statute and reverse.
The rented vehicle in which appellant was traveling was stopped for a speeding violation in the early morning hours on March 2, 1999. After the vehicle was stopped, appellant’s wife, who was driving, was asked by the officer if there was anything in the vehicle of which he should be aware. She stated that there was not. After repeating his question to her several times and getting negative responses, the officer called a canine unit to the scene.
When the canine officer arrived, he asked appellant’s wife if there were any narcotics, firearms, or large amounts of money in the vehicle. She stated that there were no drugs, but that there was $8,000 in the car. Appellant and another passenger were then asked to exit the vehicle and appellant was asked the same question. He stated that there were no narcotics, but that there was $10,000 in a box wrapped in a sheet on the back seat. At that point, the officer asked appellant for consent to search the vehicle and he agreed. The officer then deployed the dog, which alerted to the rear tail light of the vehicle. When released inside the vehicle, however, he failed to give any indication of the presence of narcotics. The officers then searched the vehicle and seized the box containing the money. $55,-045 in currency was found packaged in bundles of approximately $1,000 with varying denominations in each bundle. Appellant told the officers that he had no bank account and that he had won the money gambling. He produced receipts for approximately $35,000 from the Seminole Indian Casino.
A review of the' case law indicates that there must be more than a “mere suspicion” that the currency was used for an illicit purpose. See Dewey v. Department of Highway Safety & Motor Vehicles, 529 So.2d 300 (Fla. 2d DCA 1987); Lobo v. Metro-Dade Police Dep't, 505 So.2d 621 (Fla. 3d DCA 1987); Department of Highway Safety & Motor Vehicles v. Charles, 606 So.2d 750 (Fla. 5th DCA 1992); In re: Forfeiture of $62,200 in U.S. Currency, 531 So.2d 352 (Fla. 1st DCA 1988). Here, while there were conflicting statements by appellant and his wife regarding the amount of money in the vehicle, there was nothing in those contradictions to indicate that the money was being used in violation of the Florida Contraband Act. Appellant consented to a search of the vehicle, there was no contraband found in the vehicle, there were no items found that might indicate criminal behavior, and there was no attempt by any of the occupants of the vehicle to flee or give false information. Perhaps appellant’s most persuasive argument is the fact that the police dog failed to alert to the money even after sniffing the sheet the box- was wrapped in, and the fact that appellant produced receipts for a major portion of the money indicating that he had won the money gambling. Additionally, although the money was bundled in increments of $1,000, each bundle contained varying denominations, contrary to testimony of one of the officers that the usual mode of packaging in the drug trade is in $1,000 bundles of the same denomination.
The money after seizure was stored by the police in close proximity to other narcotics and later displayed at a press conference. The fact that the police dog subsequently alerted to the money when a demonstration was organized in which the seized money was placed with money from a bank is not persuasive. There was no way of determining if the property had been contaminated following its seizure.
*737 Finally, we find no error in appellant’s appearance at the preliminary hearing through counsel. See Munoz v. City of Coral Gables, 695 So.2d 1283 (Fla. 3d DCA 1997). He submitted a verified affidavit attesting to ownership of the money, stated that he had won the money gambling and attached receipts, and stated that he lived in a high crime area, had no bank account, and believed the money was safer in his possession.
Reversed and remanded.
PARKER and SALCINES, JJ., Concur.