780 So.2d 949 (2001)
STATE OF FLORIDA DEPARTMENT OF HIGHWAY SAFETY AND MOTOR VEHICLES, Appellant,
v.
Rodney JONES, Appellee.
No. 4D00-2394.
District Court of Appeal of Florida, Fourth District.
February 28, 2001.
Rehearing Denied April 17, 2001.
Robert A. Butterworth, Attorney General, Tallahassee, and Frank J. Ingrassia, Assistant Attorney General, Ft. Lauderdale, for appellant.
Harry H. Morall, II, of Morall & Carey, Attorney At Law, Orlando, for appellee.
WARNER, C.J.
After an adversarial preliminary hearing on a complaint for forfeiture of currency, the trial court found no probable cause to believe that the currency was used or intended to be used in violation of Florida's *950 Statutes. Based upon the factual findings made, we conclude that the trial court was correct and affirm.
The facts are fully set forth in the trial court's order from which we quote:
Most of the facts of this case are uncontested. On June 7, 2000, a Florida State Trooper stopped a 1999 GMC Yukon vehicle for speeding. The driver of the vehicle was Mr. Jones. For purposes of this hearing, Mr. Jones did not contest the stop. Mr. Jones gave his written consent for the search of his vehicle.
The Trooper asked permission to search the vehicle because he smelled a strong odor of air freshener (which he considered to be a "masking odor"), and because Mr. Jones' responses to the Trooper's questions concerning his arrest record were either evasive or misrepresentations. The Trooper's request for a search was also based on his discovery of $15,000 in U.S. Currency on Mr. Jones' person.
A K-9 Unit was summoned. The trained narcotics detector dog arrived at the scene and led the troopers to a small amount of marijuana residue. In a Florida State Trooper's affidavit, he testified that the marijuana residue was located on the right front passenger floor board. However, during his testimony at the preliminary hearing, the same Trooper testified that the "residue" was located in the carpet between the passenger seat and the driver's seat in the console area of the Yukon. The "residue" consisted of marijuana stems and seeds of less than an estimated one gram. According to the searching Trooper, the residue was too insignificant in volume to be recovered. Also, "It was embedded in the carpet and it would have taken tweezers" to recover it.
The Trooper's searches also led to a brown paper bag that had four Hydrocodone pills (with marking Watson 349) which were not inside a prescription bottle.
After the $15,000 in U.S. currency and the 1999 GMC Yukon vehicle were seized, the narcotics detector dog also alerted when sniffing the currency. Two days after the currency and the vehicle were seized, a United States Coast Guard ion scan test was conducted and high levels of cocaine were found on the seized currency.
At the hearing held before this court on June 23, 2000, Mr. Jones produced an expired prescription bottle for the four Hydrocodone pills. The Trooper who made the stop testified that had those pills been in a prescription container at the time of the stop there would not have been probable cause to seize the funds. (Although the attorney for the State argued otherwise).
One of the Troopers signed an affidavit of probable cause on June 21, 2000. According to paragraph 12 of his affidavit...
"The Fifteen Thousand Dollars was deposited at the Bank of America in West Palm Beach on June 9, 2000, in the Department of Highway Safety and Motor Vehicle Trust Account."
The state appeals the order, contending that the trial court erred in finding that the officer lacked probable cause to seize the currency. Because the state limits its argument to the finding of no probable cause, it has abandoned any claim that the hydrocodone pills have some nexus to the currency.
Currency that amounts to contraband is subject to forfeiture. See §§ 932.702-.703, Fla. Stat. (2000). For the purposes of the Florida Contraband Forfeiture Act,[1] a contraband article includes:
Any controlled substance as defined in chapter 893 or any substance, device, paraphernalia, or currency or other means of exchange that was used, was *951 attempted to be used, or was intended to be used in violation of any provision of chapter 893, if the totality of the facts presented by the state is clearly sufficient to meet the state's burden of establishing probable cause to believe that a nexus exists between the article seized and the narcotics activity, whether or not the use of the contraband article can be traced to a specific narcotics transaction.

§ 932.701(2)(a)1., Fla. Stat. (2000)(emphasis added).
The initial burden is on the state to show probable cause for the forfeiture at an adversarial preliminary hearing. The third district in In re Forfeiture of One Hundred Seventy-One Thousand Nine Hundred Dollars ($171,900) in U.S. Currency, 711 So.2d 1269, 1274 (Fla. 3d DCA 1998), explained that:
The determination of probable cause involves "the question of whether the information relied upon by the state is adequate and sufficiently reliable to warrant the belief by a reasonable person that a violation has occurred." Medious v. Department of Highway Safety & Motor Vehicles, 534 So.2d 729, 732 (Fla. 5th DCA 1988); see also Lobo v. Metro-Dade Police Dept., 505 So.2d 621, 623 (Fla. 3d DCA 1987); United States v. One 56-Foot Motor Yacht Named Tahuna, 702 F.2d 1276, 1282 (9th Cir.1983). This belief must be more than mere suspicion, but can be created by less than prima facie proof. See Lobo, 505 So.2d at 623; United States v. $4,255,000 in U.S. Currency, 762 F.2d 895, 902 (11th Cir.1985); United States v. $364,960 in U.S. Currency, 661 F.2d 319, 323 (5th Cir.1981). Probable cause for forfeiture may be established by circumstantial evidence, see Vessel Described as One 36 Foot Mirage v. State Department of Natural Resources, 487 So.2d 1134, 1136 (Fla. 3d DCA 1986), and even by hearsay evidence, see In re Forfeiture of 1983 Wellcraft Scarab, 487 So.2d 306, 310 (Fla. 4th DCA 1986).
Because Fourth Amendment protections apply in forfeiture proceedings, see Daniels v. Cochran, 654 So.2d 609, 612 (Fla. 4th DCA 1995), we accept the historical facts as found by the trial court and review de novo on appeal whether the application of those facts to the law forms an adequate basis to support the trial court's finding with respect to probable cause. See Ornelas v. United States, 517 U.S. 690, 691, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996); Curtis v. State, 748 So.2d 370 (Fla. 4th DCA 2000).
The pertinent findings which the state argues constitute probable cause to believe that the currency seized was used or intended to be used in connection with drug activity are: (1) a heavy odor of air freshener in the car; (2) the defendant misrepresenting his arrest record;[2] (3) marijuana residue embedded into the car carpet beneath the driver's seat; (4) the amount of $15,000 fastened with rubber bands; and (5) a dog sniff alert to the presence of drugs on the currency followed by an ion test that confirmed the presence of cocaine. The state also suggests that appellee gave contradictory stories as to his destination and why he had the money. We conclude that his explanations were not inconsistent. When asked where he was going, he told the trooper that he was traveling to visit his grandmother. After appellee showed the officer the money in his pocket, he explained that he had withdrawn it from a bank to buy restaurant equipment for a restaurant he managed. There is no inconsistency.
We agree with the trial court that the facts as presented are insufficient to show probable cause to seize the currency. Generally, a positive alert by a drug dog to narcotics on currency, standing alone, does *952 not constitute evidence that the money was used in a drug transaction. See $7,058.84 in U.S. Currency v. State, 30 S.W.3d 580, 588 (Tex.App.2000); see also State v. Seventy-Seven Thousand Fourteen ($77,014), 607 So.2d 576 (La.Ct.App.1992); United States v. $30,060 in U.S. Currency, 39 F.3d 1039, 1041-2 (9th Cir.1994); United States v. $5,000 In U.S. Currency, 40 F.3d 846, 849-50 (6th Cir.1994)(no probable cause to seize currency where dog alerted to $5,000 and $9,750 in currency, the money was wrapped in bundles wrapped with rubber bands and the two individuals involved gave inconsistent stories). For one thing, much currency in the money supply has narcotics residue on it that a trained dog can detect. See id. at 849 (mentioning study by Lee Hearn, Chief Toxicologist for Florida's Dade County Medical Examiner's office that 97% of bills from around the country tested positive for cocaine); People v. $497,590 U.S. Currency, 58 Cal. App.4th 145, 68 Cal.Rptr.2d 185, 192 (1997).
Moreover, the dog alert to the currency did not occur at the scene. The currency was taken to the station where it was hidden in a Florida Highway Patrol Vehicle. The dog then alerted to it in the patrol vehicle. The trial court found that there was no evidence that the currency was tainted by the cocaine while it was in appellee's possession. We conclude that the state failed in its proof. Cf. In re Forfeiture of Fifty-Five Thousand Forty Five Dollars ($55,045) in U.S.Currency, 753 So.2d 735, 736 (Fla. 2d DCA 2000).
Even when we combine the dog alert to the currency with the other factors, we are still left with nothing more than a suspicion that this particular currency was used or intended to be used in a drug transaction. There were no drugs found in the vehicle. While some seeds or residue of marijuana was under the seat, it was so insignificant that the trooper did not arrest appellee for possession and did not try to retrieve any of the particles. In a similar factual situation, a Texas appellate court concluded that the officer's observation of traces of marijuana on a suspect's shirt, combined with a drug dog alert on currency, was insufficient to constitute probable cause to believe that the money was contraband. See $7,058.84 in U.S. Currency, 30 S.W.3d at 588.
The state relies on In re Forfeiture of $62,200 in U.S. Currency, 531 So.2d 352 (Fla. 1st DCA 1988), as being similar. However, we distinguish that case because the officer discovered cocaine and a cocaine kit, a dog alerted to the much larger sum of $62,200, and the driver and passenger gave inconsistent stories as to the source of the monies. Here, no cocaine or drug paraphernalia was discovered, and appellee's explanation was not inconsistent.
Department of Highway Safety and Motor Vehicles v. Charles, 606 So.2d 750 (Fla. 5th DCA 1992), is also distinguishable. In that case, when the officer approached the vehicle, he smelled a strong odor of marijuana coming from the cab. After the occupants agreed to a search of the vehicle, the officer discovered a metal ammunition can that contained $35,000 in currency and some marijuana. Not only did the occupants appear to try to hide this container, but when asked, all denied knowing how it got there. Other money was found in baggies, and a dog alerted to that money. Later, one of the occupants "gave a most extraordinary explanation of how the currency arrived in the pickup [truck]." Id. at 753. In other words, the appellate court found the explanation completely unbelievable. At the roadside stop, the officer also discovered that two of the occupants of the vehicle had prior drug-crime records. On the basis of these facts, the court concluded that the state had sustained its burden to show probable cause for the seizure of the money. The actual presence of drug odor, drugs found in the same container containing currency, and the denials of knowledge of the currency, followed by a far fetched explanation for its presence differentiates Charles from the instant case.
*953 More difficult to distinguish is Lobo v. Metro-Dade Police Department, 505 So.2d 621 (Fla. 3d DCA 1987). After a traffic stop of appellant, a Brazilian citizen, the officer asked for identification. As a passenger opened the trunk of the vehicle to retrieve the information, the officer spotted a duffel bag and asked the passenger to open it. She became very nervous, but after a second request the passenger complied, revealing a substantial amount of cash, specifically $142,795. Appellant explained that she had the cash because she had just sold an airplane but could not provide the officer with any of the details of the sale. A drug dog was brought to the scene and alerted to the currency. The cash was wrapped in rubber bands in denominations of ones, fives, tens, twenties, fifties, and hundreds. In concluding that probable cause was shown, the appellate court stated:
An alert by a trained, experienced narcotics dog, as was the dog in this case, is in itself enough to establish probable cause for an arrest, that chapter 893 violation has occurred and that the money is itself strong evidence that it was involved in a drug transaction. Moreover, the manner in which the money was packaged, with rubber bands in stacks, is unique to drug dealers and was carried in a duffle bag. Additionally, appellant could not provide details of the sale, and her interaction with Pablo [the alleged courier of money for the purchase of the plane] was suspect. Thus, the totality of the circumstances gave rise to probable cause in this case.
Id. at 623. Although Lobo may also be distinguished on its facts, i.e., the substantially larger amount of currency, the more detailed description of the bundling of the money, and the inconsistent explanation of how the appellant obtained the money, to the extent that Lobo suggests that a dog alert to the currency standing alone is sufficient to establish probable cause for a seizure, we expressly disagree.
This case is more like Dewey v. Department of Highway Safety & Motor Vehicles, 529 So.2d 300 (Fla. 2d DCA 1987). As in this case, the driver in Dewey was stopped for speeding. While writing a ticket, the trooper requested and obtained a warrant check showing that there was an outstanding warrant for the driver. The driver was arrested on the outstanding warrant and then authorized the trooper to make a visual inspection of the car. The trooper found a bag of coins lying on the floorboard of the driver's side and a pad. In the trunk, the trooper found a brown paper bag with a mason jar inside the bag. There was $13,000 in the bag and jar.
A search of the interior of the car revealed a marijuana cigarette and several marijuana seeds. A canine unit was called to sniff for narcotics. The dog alerted to the passenger door, the ashtray where the seeds were found, and the armrest where the cigarette was found. Upon being placed in the trunk of the car without the bag or mason jar therein, the dog did not alert to anything. When the bag and mason jar were replaced in the trunk by the trooper, the dog was brought back and alerted on the mason jar and the money. The trooper testified that the coins and pad were significant in that drug dealers often use pay phones and need a pad to record their contacts.
The Dewey court found that its case involved a situation similar to, but with significant enough differences from those in Lobo. It concluded such that the circumstances created no more than a mere suspicion of the requisite nexus between the money and criminal activity.
In the instant case, appellee consented to the search, which revealed no drugs (except the marijuana residue) or paraphernalia. He had a reasonable explanation for his possession of the $15,000, and the dog alert did not occur until after the money was removed from his possession and in the custody of the police. The trial court did not find that the totality of the circumstances were sufficient to constitute *954 probable cause that the currency was used or intended to be used in drug offenses. On de novo review, we agree with its conclusion.
Affirmed.
DELL and FARMER, JJ., concur.
NOTES
[1] §§ 932.701-.707, Fla. Stat. (2000).
[2] Appellee stated that he had been arrested for breaking and entering. From dispatch, the officer obtained information that appellee had several arrests, but no convictions, for drug offenses.