942 So.2d 1039 (2006)
In re FORFEITURE OF: SEVEN THOUSAND AND 00/100 DOLLARS ($7000.00) UNITED STATES CURRENCY.
Department of Highway Safety & Motor Vehicles, Appellant,
v.
Hector E. Calderon and Maria Teresa Peralta-Mazza, Appellees.
No. 2D05-6167.
District Court of Appeal of Florida, Second District.
December 8, 2006.
*1040 Charles J. Crist, Jr., Attorney General, Tallahassee, and Steven Todd Gold, Deputy Solicitor General, Tallahassee, for Appellant.
No appearance for Appellees.
NORTHCUTT, Judge.
We conclude that the Department of Highway Safety and Motor Vehicles established probable cause for the forfeiture of $7000 in currency seized from Hector Calderon's car, and so we reverse the circuit court's ruling to the contrary.
Florida Highway Patrol Trooper Michael Merritt stopped Calderon for speeding on I-75 in Lee County. Maria Teresa Peralta-Mazza was in the car with Calderon, as was the couple's baby. The trooper seized $7000 that was discovered in the car, and the Department filed a petition for forfeiture. See § 932.704(4), Fla. Stat. (2005).
The Florida Contraband Forfeiture Act defines contraband, in part, as "currency . . . that was used, was attempted to be used, or was intended to be used" in violation of various Florida laws, including the drug laws in chapter 893, Florida Statutes. § 932.701(2)(a)(1). The State has the burden of establishing "probable cause to believe that a nexus exists between the article seized and the narcotics activity, whether or not the use of the contraband article can be traced to a specific narcotics transaction." § 932.701(2)(a)(1).
After the seizure of personal property, the seizing agency must provide notice of the right to an adversarial preliminary hearing, and a defined class of persons entitled to notice has a specified time to request such a hearing. § 932.703(2)(a). If requested, the hearing must be held in short order, and the court must determine *1041 whether the seizing agency proves probable cause for forfeiture by reviewing the agency's verified affidavit, supporting documents, and testimony. § 932.703(2)(c). If probable cause is established, the property is held until a trial on the ultimate issue of forfeiture. § 932.704(3). A final order of forfeiture must be based on clear and convincing evidence.
Calderon and Peralta-Mazza timely obtained an adversarial preliminary hearing. At the hearing, Trooper Merritt testified that after he had stopped Calderon and was writing a traffic citation, he learned that Calderon was driving with a suspended license and was on probation for possession of MDMA (Ecstasy). Calderon was initially evasive when responding to the trooper's questions about his criminal history, but when asked directly Calderon finally admitted that he was on probation for the drug charge. According to Trooper Merritt, Calderon was very nervous during the traffic stop and his nervousness increased to the point that his voice was trembling and his hands and legs were shaking.
The trooper testified that Calderon and Peralta-Mazza consented to a search of the vehicle, and the search revealed about $2000 in a purse and another $5000 that had been placed in a man's athletic shoe. Calderon and Peralta-Mazza waited with their baby in the back of the patrol car, and their conversation was recorded while they sat there. In the patrol car, Peralta-Mazza asked Calderon whether it was illegal to have the money, and Calderon told Peralta-Mazza to say that the money was hers. Calderon also asked Peralta-Mazza if she still had marijuana in her purse, to which she said no, and there was some discussion regarding whether a pill would be found in the car.
Trooper Merritt testified that when he interviewed Calderon and Peralta-Mazza after the search they gave inconsistent statements about the source of the money, who owned it, and how it came to be in the car. Calderon, for example, said that his mother had put the $5000 in the shoe and left it on her front porch for him to pick up. Not surprisingly, the trooper found this story odd. Peralta-Mazza said that the money was in a cardboard box in the house and she retrieved it and put it in the car. Both said that some of the money came from Calderon's sale of a car for his mother, but one said that the sale had occurred a month previously and the other asserted that it had been a year since the sale.
Calderon and Peralta-Mazza told the trooper that they held modest-paying jobs, and Peralta-Mazza said she was living on public assistance. They both said they had bank accounts but did not have an explanation satisfactory to the trooper as to why they were carrying so much cash. Given the description of their economic circumstances, the amount of currency made the trooper suspicious. The money, mostly twenty-dollar bills, was packaged in bundles of $1000 and wrapped with rubber bands. According to law enforcement testimony at the hearing, this was consistent with the way drug dealers carry their currency. Further, Trooper Merritt testified that there were five cell phones in the car and that two were ringing constantly during the traffic stop. In the trooper's experience, the number of cell phones was also similar to the modus operandi for drug dealers.
Shortly after the stop, Trooper Merritt was joined by Sergeant Stephen Ford of the Lee County Sheriff's Office. Sergeant Ford had a narcotics detection dog with him, and the dog alerted on the car. Calderon attempted to explain the dog's alert by stating that some people had recently smoked marijuana in the car. Trooper *1042 Merritt testified that he saw marijuana residue in the driver's seat and on the floorboard, but no drugs were seized.
After hearing the evidence, the circuit court ruled that there was no probable cause for forfeiture proceedings because no illegal controlled substances were found in the car, and the Department appealed. At this stage, we are reviewing only whether the Department established probable cause for forfeiture. Because Fourth Amendment protections apply in forfeiture proceedings, we accept the historical facts as found by the circuit court and we review de novo whether the application of the law to those facts forms an adequate basis to support the circuit court's finding with respect to probable cause. State, Dep't of Highway Safety & Motor Vehicles v. Jones, 780 So.2d 949, 951 (Fla. 4th DCA 2001).
As mentioned above, the Department was not required to connect the currency to a specific narcotics transaction. It was only required to demonstrate probable cause to believe that there was a nexus between the currency and narcotics activity. § 932.701(2)(a)(1). Probable cause in this context means less than a prima facie case, but more than a mere suspicion. Dep't of Highway Safety & Motor Vehicles v. Charles, 606 So.2d 750, 753-54 (Fla. 5th DCA 1992).
Even though no drugs were found in the car, such that the currency could be traced to a specific transaction, the totality of the circumstances amply established probable cause to believe there was a nexus between the currency and illegal narcotics activity. As such, there was probable cause for the forfeiture. See State, Dep't of Highway Safety & Motor Vehicles v. Holguin, 909 So.2d 956 (Fla. 3d DCA 2005) (concluding that State met preliminary burden of establishing probable cause based in part on trooper's testimony that he detected smell of burned marijuana, driver admitted smoking marijuana earlier, and $17,600 was rolled into packs of bills segregated by denomination); Charles, 606 So.2d 750 (concluding probable cause was shown by peculiar container used to transport unusually large amount of currency, packaged in manner unique to drug dealers in officers' experience, by people with criminal records including drug offenses, who also possessed small amount of drugs in addition to currency). Accordingly, we reverse.
Reversed and remanded for further proceedings.
SALCINES and VILLANTI, JJ., Concur.