Filed 1/14/16  Sherman-Bey v. Shaffer CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| DARREN EUGENE SHERMAN-BEY, | C077499 |
| Plaintiff and Appellant, | (Super. Ct. No. 34201180000970CUWMGDS) |
| v. | |
| JENNIFER SHAFFER, as Executive Officer, etc., | |
| Defendant and Appellant. | |

This case is about the validity of a regulation governing the use of psychological risk assessments in determining parole eligibility for life inmates, California Code of Regulations, title 15, section 2240 (section 2240).

But, this case turns in large part on an appellant's duty to include essential portions of the record on appeal needed to analyze the issues raised and the burden to persuade us that the trial court's ruling was wrong.  Specifically, both appellants rely heavily on the rulemaking record for the regulation, as did the trial court, but contrary to the California Rules of Court, neither party has had transmitted to this court the entire

1

administrative record that was reviewed by the trial court in making its ruling here. It is their burden to do so. (Cal. Rules of Court, rules 8.120(a)(2), 8.123(b).) Without the administrative record, we cannot fully assess the validity of many of both appellants' major contentions. Thus, both parties have forfeited any contentions that require us to examine the administrative record.[1]

Regarding the claims that do not require us to examine the administrative record, we reject both parties' appellate arguments because they do not have a basis in either the law or facts.

We therefore affirm the judgment of the trial court, which granted in part Sherman-Bey's petition for writ of mandate challenging section 2240 because that section failed to comply with the Administrative Procedure Act's clarity standard.

---

[1]     The mistake Sherman-Bey repeatedly made is in failing to designate an administrative record to be transmitted to this court. (Cal. Rues of Court, rule 8.120(a)(2).) Instead, he designated, among other things in the clerk's transcript, "Notice of Lodging of Record and accompanying attachments filed on January 21, 2014." This two-page item in the clerk's transcript is indeed included in the record on appeal. When the administrative record containing the rulemaking record was (properly) not included in the clerk's transcript on appeal because it was never designated, Sherman-Bey filed a notice on incomplete clerk's transcript. In response, the trial court clerk declared that the document Sherman-Bey requested be lodged was indeed lodged (i.e., "Notice of Lodging of Record and accompanying attachments filed on January 21, 2014"). However, there were no accompanying attachments ever filed in the trial court, so the trial court could not include those documents.

Perhaps to remedy this problem, Sherman-Bey has included two portions of the administrative record as attachments to his reply brief, and we granted him permission to file those two attachments. To the extent the attachments have some bearing on our discussion of the contentions on appeal, we will address them in footnotes in this opinion.

We still note, however, the fundamental problem is that we do not have the entire administrative record the court reviewed in making its ruling.

FACTUAL AND PROCEDURAL BACKGROUND

Life inmate Sherman-Bey filed a petition for writ of mandate in the trial court challenging section 2240, which provides as follows:  Before a life inmate's initial parole consideration hearing, and every five years thereafter, a comprehensive risk assessment will be performed by a Board of Parole Hearings psychologist.  (§ 2240, subds. (a), (b).) That comprehensive risk assessment "will provide the clinician's opinion, based on the available data, of the inmate's potential for future violence.  *Board of Parole Hearings psychologists may incorporate actuarially derived and structured professional judgment approaches to evaluate an inmate's potential for future violence.*"  (§ 2240, subd. (b), italics added.)

Section 2240 was adopted by the California Board of Parole Hearings in 2011 in response to a 2010 determination by the California Office of Administrative Law that the process by which the Board of Parole Hearings conducted psychological evaluations was an underground regulation.[2]  That underground regulation had been in place since January 2009 and included a forensic assessment division to oversee preparing psychological evaluations for parole suitability hearings.  Those psychological evaluations included use of several enumerated risk assessment tools to assess the inmate's potential for future violence.

Sherman-Bey's challenge to section 2240 in the trial court was based on contentions that he again raises here, namely, that the Board of Parole Hearings failed to substantially comply with the requirements of the Administrative Procedure Act because the board did not adequately respond to public comments, the board misrepresented facts,

---

[2]     Any regulation not properly adopted under the California Administrative Procedure Act  (Gov. Code, § 11340 et seq.) is considered an underground regulation. (*Patterson Flying Service v. Department of Pesticide Regulation* (2008) 161 Cal.App.4th 411, 429.)

3

and the board improperly mandated the use of specific risk assessment tools. Sherman-Bey also argued, as he does here, that section 2240 conflicts with other laws and that psychological evaluations completed by the board from the time the underground regulation was in effect are invalid and should be removed from inmates' files.

Sherman-Bey's challenge to section 2240 in the trial court was also based on his contention that the Board of Parole Hearings failed to substantially comply with the Administrative Procedure Act's clarity standard. With regard to this contention, the trial court ruled "the regulation substantially fails to comply with the [Administrative Procedure Act's] clarity standard, both because the regulation uses terms that do not have meanings generally familiar to those directly affected by the regulation, and because the language of the regulation conflicts with the agency's description of the effect of the regulation." "This language lacks clarity because the terms 'actuarially derived and structured professional judgment' are not 'easily understood' by or 'generally familiar' to life inmates, who are directly affected by the regulation." "In addition, the regulation is unclear because the language of the regulation conflicts with the agency's description of the effect of the regulation. By using the word 'may,' the regulation suggests Board psychologists have discretion to decide not only whether to incorporate 'actuarially derived and structured professional judgment approaches' in evaluating an inmate's potential for future violence, but what, if any, 'approaches' to use." "In contrast, the Board's description of the regulation in the Statement of Reasons refers to a 'battery' of risk assessment tools 'selected' by the Board, and the Statement of Reasons assumes the risk assessment tools will be 'administered' to inmates to determine their risk of future violence. [Citations.] As a result, the regulation is unclear with respect to the responsibilities of the Board psychologists who will implement it."

As to the remedy, the trial court granted in part Sherman-Bey's petition for writ of mandate, "allow[ing] Respondent Board eight months to correct the identified deficiencies in [section 2240] by adopting a new or amended regulation, in compliance

4

with the requirements of the [Administrative Procedure Act]." "If the regulation is not amended or replaced within eight months after entry of judgment, the portion of the regulation providing that 'Board of Parole Hearings psychologists may incorporate actuarially derived and structured professional judgment approaches to evaluate an inmate's potential for future violence,' which is severable, shall be invalidated as of that date, and the Board shall be permanently enjoined from enforcing that provision after that date." The trial court entered judgment on September 9, 2014.

In this court now, the board challenges the trial court's partial grant of Sherman-Bey's petition for writ of mandate.

DISCUSSION

I

*The Board Has Failed To Carry Its Burden As Appellant Both To Persuade This Court That The Trial Court Erred In Finding Section 2240 Lacked Clarity And To Provide Us An Adequate Record On Review*

The board contends the trial court erred in finding that section 2240 did not comply with the Administrative Procedure Act's clarity requirement because in its view (a) the term " 'actuarially derived and structured professional judgment' " approaches is clear; and (b) the term does not conflict with the board's description of the effect of the regulation.

As we explain, as to (a), the board's one-line argument that the term " 'actuarially derived and structured professional judgment' " approaches is clear ignores statutory language and fails to carry its burden as appellant to persuade us that the trial court erred in finding the term unclear. As to (b), the board has failed to provide us an adequate record to review its contention.

5

A

*The Board Has Not Carried Its Burden As Appellant To*

*Persuade Us That The Trial Court Erred In Finding Unclear The Term*

*" 'Actuarially Derived And Structured Professional Judgment' " Approaches*

The Administrative Procedure Act (Gov. Code, § 11340 et seq.) requires that agencies draft regulations "in plain, straightforward language, avoiding technical terms as much as possible, and using a coherent and easily readable style . . . ." (Gov. Code, § 11346.2, subd. (a)(1).) A regulation is drafted with "clarity" when it is "written or displayed so that the meaning of regulations will be easily understood by those persons directly affected by them." (Gov. Code, § 11349, subd. (c).) "A regulation shall be presumed not to comply with the 'clarity' standard if," among other things, "the regulation uses terms which do not have meanings generally familiar to those 'directly affected' by the regulation, and those terms are defined neither in the regulation nor in the governing statute." (Cal. Code Regs., tit. 1, § 16, subd. (a)(3).) Persons who are presumed to be "directly affected" by a regulation are those who are legally required to comply with or enforce the regulation or who receive a benefit or suffer a detriment from the regulation that is not common to the public in general. (Cal. Code Regs., tit. 1, § 16, subd. (b).) Here, as the trial court correctly found, "the persons 'directly affected' by the regulation are the Board [of Parole Hearings] psychologists who prepare the parole suitability risk assessments, and the life inmates who are subject to them."

With these definitional principles in mind, we turn to the board's first contention. As to that contention, the entirety of its argument is as follows: "The regulatory language at issue, however, provides notice to those affected by it that Board psychologists will use their professional judgment in conducting Comprehensive Risk Assessments. It, therefore, does not lack clarity." The language to which the board is referring is as follows: "Board of Parole Hearings psychologists may incorporate actuarially derived and structured professional judgment approaches to evaluate an inmate's potential for

6

future violence." (§ 2240, subd. (b).) In the trial court's view, "[t]his language lacks clarity because the terms 'actuarially derived and structured professional judgment' are not 'easily understood' by or 'generally familiar' to life inmates, who are directly affected by the regulation."

The problem with the board's contention is that it has not carried its burden as the appellant to persuade us that the trial court erred in holding that this language lacks clarity. As this court has stated, "Perhaps the most fundamental rule of appellate law is that the judgment challenged on appeal is presumed correct, and it is the appellant's burden to affirmatively demonstrate error. (See *People v. $ 497,590 United States Currency* (1997) 58 Cal.App.4th 145, 152-153.)" (*People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573.) The board's one-line argument as to why the regulatory language is clear falls short of carrying its burden to affirmatively demonstrate error. Specifically, the board's argument equates "actuarially derived and structured professional judgment" approaches to a psychologist's "professional judgment." The problem with this argument is that it reads out of section 2240 the words "actuarially derived" and "structured . . . approaches," the very words that the trial court found were not easily understood by or generally familiar to life inmates.

The board does not point us to a definition of "actuarially derived" or "structured . . . approaches" and does not explain what they mean. If the drafters of section 2240 had meant simply that the Board of Parole Hearings psychologists may use their professional judgment to evaluate an inmate's potential for future violence, there was no need to use the words "actuarially derived" and "structured . . . approaches" to modify the type of judgment the psychologist may use. "It is a settled principle of statutory construction that courts should 'strive to give meaning to every word in a statute and to avoid constructions that render words, phrases, or clauses superfluous.' " (*In re C.H.* (2011) 53 Cal.4th 94, 103.) The board's argument ignores this settled principle, indeed ignoring the very words the trial court found lacking in clarity. Thus, the board's

argument has failed to persuade us that the trial court erred in finding that the language in section 2240, subdivision (b) that "Board of Parole Hearings psychologists may incorporate actuarially derived and structured professional judgment approaches to evaluate an inmate's potential for future violence" lacks clarity.

B

*The Board Has Not Carried Its Burden To Provide Us With An Adequate Record To Assess Its Claim That The Court Erred In Finding That The Term "Actuarially Derived And Structured Professional Judgment Approaches" Conflicts With The Board Of Parole Hearings' Description Of The Effect Of The Regulation*

"A regulation shall be presumed not to comply with the 'clarity' standard if," among other things, "the language of the regulation conflicts with the agency's description of the effect of the regulation." (Cal. Code Regs., tit. 1, § 16, subd. (a) (2).)

The trial court ruled that in addition to section 2240 lacking clarity because the terms "actuarially derived and structured professional judgment" are not easily understood by or generally familiar to life inmates, "the regulation is unclear because the language of the regulation conflicts with the agency's description of the effect of the regulation. By using the word 'may,' the regulation suggests Board psychologists have discretion to decide not only whether to incorporate 'actuarially derived and structured professional judgment approaches' in evaluating an inmate's potential for future violence, but what, if any, 'approaches' to use." "In contrast, the Board's description of the regulation in the Statement of Reasons refers to a 'battery' of risk assessment tools 'selected' by the Board, and the Statement of Reasons assumes the risk assessment tools will be 'administered' to inmates to determine their risk of future violence. [Citations.] As a result, the regulation is unclear with respect to the responsibilities of the Board psychologists who will implement it."

The board contends the trial court erred in this finding because section 2240 does not conflict with its description of the effect of the regulation. As we explain, the board

8

again fails to carry its burden as the appellant to demonstrate error, but this time because it has failed to have the administrative record transmitted to our court, which is necessary for us to resolve its contention.

The board's contention of no conflict is based on its view that "the regulation does not state that Board psychologists have discretion to choose what risk assessment instruments to use" and "although the explanation of the regulation refers to a 'battery of risk assessments adopted by the Board, nowhere does it state that the adopted risk assessments will be used during each and every comprehensive risk assessment. In fact, the evidence demonstrates that there are instances where none of these risk assessment tools are used."

The board's contention turns on "the evidence," namely, the rulemaking record. Indeed, the trial court cited nine pages of the rulemaking record in its analysis of why there was no clarity on this point. Included in these nine pages is the statement of reasons that the court relied on in making its determination of no clarity. However, the board fails to provide us with this evidence. Instead, the board cites as "the evidence" "CT . . . 217," which is its brief in the trial court entitled, "Opposition to Opening Brief." If we follow the trail, that portion of its trial court brief contains a citation to a declaration from the Chief Psychologist of the Forensic Assessment Division at the Board of Parole Hearings that is included as an exhibit to its "Opposition to Opening Brief." Doing some more investigation into how this declaration may fit into the evidence, we find that in the board's "SUR-REPLY" brief in the trial court, the board claims that "all the information in [that psychologist's] declaration . . . is also in the rulemaking file."

The board, however, has not incorporated the rulemaking file into the record on appeal. As the appellant challenging the trial court's ruling that section 2240 lacked clarity, it is its burden to include the administrative record if, as it did, it intended to raise any issue that requires its consideration. (Cal. Rules of Court, rules 8.120(a)(2).) Specifically, "[i]f an appellant intends to raise any issue that requires consideration of the

9

record of an administrative proceeding that was admitted in evidence, refused, or lodged in the superior court, the record on appeal must include that administrative record, transmitted under rule 8.123." (*Ibid*.). Here, the administrative record was lodged in the trial court. The board, either as appellant or respondent here, should have requested transmission to this court of the administrative record that was lodged in the trial court. (Cal. Rules of Court, rule 8.123.) We, as the appellate court, have no responsibility to perfect an inadequate record. (*In re Marriage of Wilcox* (2004) 124 Cal.App.4th 492, 498-499.) "Failure to provide an adequate record concerning an issue challenged on appeal requires that the issue be resolved against the appellants." (*Eureka Citizens for Responsible Government v. City of Eureka* (2007) 147 Cal.App.4th 357, 366.)[3]

---

[3] Some, but not all, of the rulemaking record that the trial court relied on in making its determination of lack of clarity in our part 1B of the Discussion above is included in exhibit 1 provided by Sherman-Bey attached to his reply brief.

Looking at the pages we do have, the board still has not carried its burden to persuade us the trial court's ruling was wrong. Section 2240, subdivision (b) states, "Board of Parole Hearings psychologists *may* incorporate actuarially derived and structured professional judgment approaches to evaluate an inmate's potential for future violence." (Italics added.) Use of the word "may," rather than the directive "shall," connotes that psychologist have discretion to "incorporate actuarially derived and structured professional judgment approaches." (See *In re Marriage of Fossum* (2011) 192 Cal.App.4th 336, 348 [it is a well established rule of statutory construction that the word "shall" connotes mandatory action and "may" connotes discretionary action].) The board has argued that the term "actuarially derived and structured professional judgment approaches" simply means "professional judgment." So, given that and the meaning of the word "may," it follows that the board's argument is that section 2240, subdivision (b) means that psychologists "may" incorporate their "professional judgment" to evaluate an inmate's potential for future violence.

This conflicts with the board's description of section 2240 in the revised final statement of reasons that we do have. The revised final statement of reasons refers to a "risk assessment battery" that "is necessary to assist [Board of Parole Hearings] psychologists in anchoring their clinical opinions regarding violence risk by insuring overall objectivity and reliability." The revised final statement of reasons also names two specific assessment instruments (the "HCR-20 and LS/CMI") that "would be

10

## II

*As To Sherman-Bey's Appellate Contentions Regarding Public Comments*
*And Alleged Misrepresentation Of Facts, He Has Failed To Carry His*
*Burden To Show Error Because He Has Failed To Provide An Adequate Record*

Sherman-Bey contends the Board of Parole Hearings failed to substantially comply with the Administrative Procedure Act because: (a) the board did not adequately respond to public comments; and (b) the board misrepresented facts, namely the findings of an expert panel of psychologists concerning various risk assessment instruments that were to be used as part of the psychological risk assessment process.

Regarding the public comments, Sherman-Bey "urge[s] this court to review the record and arguments," which he claims will lead us to the conclusion that the Board of Parole Hearings did not substantially respond to the substance of the public comments. However, as we noted with the board, appellant Sherman-Bey has also failed to provide us with the entire rulemaking record that the trial court reviewed to make its decision. Specifically, the trial court based its ruling on review of the rulemaking record containing, among other things, the public comments and the Board of Parole Hearings' responses, noting the portions of the record it reviewed. It then made a factual finding that the Board of Parole Hearings adequately responded to the public comments. On appeal, we cannot reverse the trial court's factual finding unless the appellant has provided us with a record demonstrating that the finding is not supported by substantial

---

administered as part of the risk assessment battery." This requirement in the revised final statement of reasons for a risk assessment battery consisting of two specific instruments to anchor the psychologist's clinical opinion is contrary to the board's argument that there is no conflict between section 2240 and the board's description of the effect of the regulation. The trial court was correct in ruling the regulation was unclear in this regard as well.

evidence.  Without providing us with the rulemaking record, we cannot fully assess the evidence.  Sherman-Bey has failed to provide us with such a record.[4]

---

[4]    To the extent some of those comments and responses are contained in exhibit 1 attached to Sherman-Bey's reply brief, we address them here.

Sherman-Bey admits that the "Board did respond in a technical sen[s]e, but in reality the responses were incomplete, incorrect, or inadequate."  As the trial court correctly ruled:  (1) the board substantially responded to the substance of the public comments; and (2) to the extent Sherman-Bey disagreed with the substance of the board's responses, a disagreement with an agency's response does not constitute a failure to respond.  (See *California Assn. of Medical Products Suppliers v. Maxwell-Jolly* (2011) 199 Cal.App.4th 286, 307 [a court may declare a regulation invalid only for lack of "substantial failure" to comply with the Administrative Procedure Act].)

One comment noted that section 2240, subdivision (b) does not specify the risk assessment instruments the psychologist "may" use and noted that the section " 'must explicitly prohibit the use of any risk instruments . . . specifically, the PCL-R, HCR-20, LS/CMI, and, optionally, the Static-99.' "  The board did substantially respond to this comment.  The board stated, "the proposed regulation provides that the 'Board of Parole Hearings may incorporate actuarially derived and structured professional judgment approaches to evaluate an inmate's potential for future violence.' "  And then the board went on to explain that the first three enumerated risk instruments are "among the most studied and commonly used violence risk assessments instruments in the field of forensic psychology."  The board then cited to and explained in detail the studies that supported its view.  To the extent that Sherman-Bey in his briefs to this court notes that the term "actuarially derived and structured professional approaches" lacks clarity and conflicts with the revised final statement of reasons, we have already addressed this in part I of the Discussion.

Another comment claimed that "the use of risk assessment tools by the board and the Forensic Assessment Division (FAD) is of no evidentiary value and the FAD's assessment tools are unreliable."  The board did substantially respond to this comment.  It stated it "disagrees."  The board then explained that the risk assessments were "reasonably necessary to assist the Board in determining whether an inmate . . . poses a current unreasonable risk of danger to society if released on parole," but they were only "one piece of information available to a hearing panel."  As to reliability, the board explained that reliability referred to "the ability of a test to provide consistent results" and numerically demonstrated that instruments used by the forensic assessment division had an inter-rated reliability of "above .80," which was considered "excellent."

12

Regarding the misrepresentation of facts, Sherman-Bey contends the Board of Parole Hearings misrepresented the findings of the expert panel of psychologists, namely, the board falsely claimed that the panel of expert psychologists reached a consensus regarding which risk assessment instruments should be used to assess an inmate's risk, but that no such consensus was actually reached.

The trial court found that the Board of Parole Hearings "did not misrepresent the existence of the minutes of the meeting at which the panel of experts voted on the risk assessment tools." Further, "even if there was a misstatement, it was minor, and it was corrected in the Final Statement of Reasons, where the Board clarified that the risk assessment tools were selected based on a 'ranked vote.' " In making these findings, the trial court cited the rulemaking record that we do not have. Just like with Sherman-Bey's contention regarding the public comments, we cannot reverse the trial court's factual finding unless the appellant has provided us with an adequate record. Because he has not provided us with the entire rulemaking record that was lodged in the trial court, Sherman-Bey has failed to meet his burden in this regard.[5]

---

Finally, a third set of comments claimed particular risk assessment tools were not valid for life inmates. Again the board did substantially respond to these comments. The board acknowledged that "some researchers have correctly observed that no risk assessment tools have been specifically validated for the life inmate population" but that the tools used by the forensic assessment division "have been developed and/or cross-validated for use with correctional populations and allows reasonably modest inferences to be drawn from comparisons between life inmates and other prisoners."

[5]  To the extent we can piece together at least some of the rulemaking record (both in the clerk's transcript and in exhibit 1 of Sherman-Bey's reply brief) that the trial court examined to address this contention, we discuss that record here.

In the revised initial statement of reasons, the board stated there was a "consensus" of an expert panel that "the HCR-20/PCL-R and LS/CMI were the most appropriate risk-assessment tools for the California lifer population, and the panel recommended this battery of tools to the [board]." Sherman-Bey contends as he did in the trial court that this was a misrepresentation because no consensus was actually reached. He notes that in

13

*Sherman-Bey's Contention That The Board Of Parole Hearings Improperly Focused On*

*The Use Of Certain Risk Assessment Tools In Implementing Section 2240*

*Does Not Demonstrate That Section 2240 Was Unnecessary*

For a regulation to comply with the Administrative Procedure Act, the regulation must be reasonably necessary to effectuate the purpose of the statute that the regulation implements, interprets, or makes specific. (*California Assn. of Medical Products Suppliers v. Maxwell-Jolly*, *supra*, 199 Cal.App.4th at p. 316.)

Focusing not on the regulation but on the risk assessment tools (which are not mentioned in section 2240), Sherman-Bey contends, as he did in the trial court, "that the risk assessment tools were not reasonably necessary to effectuate a determination of an inmate[']s suitability for parole." He claims that the Board of Parole Hearings' focus on particular risk assessment tools was "not supported by substantial evidence" and was based "on a misrepresentation," which shows that the board's "determination was arbitrary and capricious and should not be deferred to."

---

the final statement of reasons, this notation of "consensus recommendation" was changed to the following: "The panel agreed that a multi-method psychological risk assessment battery would be employed by the State of California for [life inmates]. Based on a *ranked vote*, it was determined that the HCR-20 and LS/CMI would be administered as part of the risk assessment battery." (Italics added.)

Assuming there is a difference between the term "consensus" and "ranked vote," this does not show a "mischaracterization" on the part of the board or a lack of substantial compliance with the Administrative Procedure Act in a way that compromises any of its reasonable objectives, namely here, meaningful participation by the public who has "timely received all available information that is relevant to the proposed regulations, accurate, and as complete as reasonably possible." (*Sims v. Department of Corrections & Rehabilitation* (2013) 216 Cal.App.4th 1059, 1073.) The board clarified that it meant ranked vote instead of consensus recommendation and the public was informed of this change in the final statement of reasons.

In responding to this contention, the trial court focused on the necessity of section 2240, noting the reasons the Board of Parole Hearings cited for the regulation, including the following:  (1) the Board of Parole Hearings' duty to consider an inmate's past and present mental state when considering the inmate's parole suitability; (2) the requirement in Penal Code section 5068 for preparation of a psychological evaluation before the release of a life inmate; (3) ongoing concerns about mental health staff from the California Department of Corrections and Rehabilitation performing the psychological evaluations of life inmates, as their primary job was providing mental health care to mentally ill inmates, so the evaluations were often not completed in time for the inmates' parole suitability hearing;  (4) orders from another trial court in a class action lawsuit that the Board of Parole Hearings develop a " 'streamlined psychological risk assessment' " process to be used for parole suitability hearings and that a minimum number of qualified psychologists be in place to prepare the psychological evaluations; and (5) the Office of Administrative Law's determination that the psychological reporting process of the Board of Parole Hearings was an underground regulation.

The trial court's focus on the necessity *of the regulation* was proper.  The reliability of the specific risk assessments used was not an issue properly before the trial court because (even as Sherman-Bey admits) the regulation does not specify the risk assessment instruments that the Board of Parole Hearings' psychologists may use.  In reviewing "whether the regulation is 'reasonably necessary' . . . the court will defer to the agency's expertise and will not 'super-impose its own policy judgment upon the agency in the absence of an arbitrary and capricious decision.' " (*Stoneham v. Rushen* (1984) 156 Cal.App.3d 302, 308.)  Here, Sherman-Bey does not challenge the five enumerated reasons the Board of Parole Hearings cited for the necessity of the regulation, so he has not demonstrated that the use of those reasons made the board's determination of necessity arbitrary and capricious.

15

IV

*Sherman-Bey Has Not Carried His Burden To Demonstrate*

*That Section 2240 Conflicts With Other Laws*

Regulations must be reviewed for consistency with other laws (along with reviewing for necessity and clarity, among others factors). (Gov. Code, § 11349.1, subd. (a)(4).) Sherman-Bey contends, as he did in the trial court, that section 2240 conflicts with the requirement that the denial of parole suitability be based on evidence of current dangerousness (*In re Lawrence* (2008) 44 Cal.4th 1181, 1191) and with the requirement that prohibits (with some exceptions) conducting biomedical and behavioral research on prisoners (Pen. Code, §§ 3502, 3516).

The trial court concluded that section 2240 does not conflict with *Lawrence* because the psychological evaluations in section 2240 are used to help determine an inmate's current dangerousness, and section 2240 does not contravene the prohibition on inmate research because it does not authorize the Board of Parole Hearings to conduct research on inmates.

The trial court was correct. As to *Lawrence*, section 2240, subdivision (b) requires in the comprehensive risk assessment an analysis of "both static and dynamic factors," which may include, but is not limited to, the inmate's "present mental state." This is consistent with *Lawrence*, which requires an assessment of current dangerousness and not just static factors such as the egregiousness of the commitment offense. (*In re Lawrence*, *supra*, 44 Cal.4th at p. 1191.) As to inmate research, as Sherman-Bey himself notes, section 2240 "does not on its face authorize research on inmates." But then he cites portions of the rulemaking record that he claims "describes that [the Board of Parole Hearings] will conduct research on inmates." As to this latter claim based on the rulemaking record, we must resolve it against Sherman-Bey because he has failed to provide us with the rulemaking record. (*Hernandez v. California Hospital Medical*

16

*Center* (2000) 78 Cal.App.4th 498, 502 ["Failure to provide an adequate record on an issue requires that the issue be resolved against [appellant]"].)**6**

V

*The Board Of Parole Hearings Was Not Required To Remove Psychological Evaluations*

*Performed Before The Enactment Of Section 2240 From Sherman-Bey's File*

Sherman-Bey contends, as he did in the trial court, that all psychological evaluations completed by the Board of Parole Hearings conducted pursuant to the underground regulation are invalid and should be removed from his and other inmates' files.

Sherman-Bey has standing to challenge only his own psychological evaluations. "As a general rule, legal standing to petition for a writ of mandate requires the petitioner

---

**6**    To the extent there is a section entitled "future research," in the revised final statement of reasons contained in exhibit 1 attached to Sherman-Bey's reply brief, that Sherman-Bey contends touches on "inmate research," we address that here.

The section entitled "future research" states "[t]he panel felt that it would be valuable to conduct research to validate the reliability of risk assessment results for a[] [life] inmate population." The section then delineates four "[a]reas of particular need for future research": (1) "[t]rack[ing] the performance of the [level of service/case management inventory] and [historical, clinical, and risk management-20 test] for predicting institutional behavior"; (2) "[c]ompar[ing] the [level of service/case management inventory and historical, clinical, and risk management-20 test] for overlap, reliability, and incremental validity"; (3) "[a]nalyz[ing] the effect of rater reliability on the administration of risk assessment tests and their corresponding results"; and (4) "[d]eploy[ing]" [a corrections assessment intervention system] or [case management inventory] on subsets of inmate population to evaluate the effect of various needs of assessment instruments."

This section does not authorize the board to conduct research on inmates. Rather, this section details part of a process to track the reliability and validity of the battery of tests used to "assess risk of or determine the likelihood of dangerousness or violence" of inmates eligible for parole and to ensure that the risk assessment tools the psychologists employ are also reliable and valid for life inmates.

17

to have a beneficial interest in the writ's issuance." (*Rialto Citizens for Responsible Growth v. City of Rialto* (2012) 208 Cal.App.4th 899, 913.) " 'The requirement that a petitioner be "beneficially interested" has been generally interpreted to mean that one may obtain the writ only if the person has some special interest to be served or some particular right to be preserved or protected over and above the interest held in common with the public at large.' " (*Save the Plastic Bag Coalition v. City of Manhattan Beach* (2011) 52 Cal.4th 155, 165.) Here, Sherman-Bey has a beneficial interest in only his own psychological evaluations. Thus, he does not have standing to argue that all the psychological evaluations of other inmates during the relevant time period be declared invalid.

Turning to his own evaluations, Sherman-Bey has still not demonstrated that the Board of Parole Hearings had a duty to remove from his prison central file the psychological evaluations completed pursuant to the underground regulation. The California Supreme Court has addressed what happens when a petitioner challenges an agency's decision made pursuant to a policy determined to be an underground regulation. (*Tidewater Marine Western, Inc. v. Bradshaw* (1996) 14 Cal.4th 557, 576-577.) "[T]he . . . policy may be void, but the underlying . . . orders are *not* void." (*Id*. at p. 577.) If the underlying orders were void, it would undermine the controlling law. (*Ibid*.) Here, since the evaluations themselves are not void, Sherman-Bey has no right to have them removed from his file simply because they were promulgated pursuant to an underground regulation.

We note one final point. The law provides Sherman-Bey with an adequate remedy if he believes there is a basis for questioning a psychological evaluation in his file. "In every case where the hearing panel considers a psychological report, the inmate and his/her attorney, at the hearing, will have an opportunity to rebut or challenge the psychological report and its findings on the record. The hearing panel will determine, at

18

its discretion, what evidentiary weight to give psychological reports." (§ 2240, subd. (d).)

## DISPOSITION

The judgment is affirmed. The parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)

/s/_____
Robie, J.

We concur:

/s/_____
Raye, P. J.

/s/_____
Mauro, J.

19